## JOHN H. SAWYER et al., Appellants, v. EMMA FRENCH.

### In Banc, November 30, 1921.

1. **PARTITION: Action at Law: Appellate Practice.** If no equitable features are alleged in a partition suit, either in the petition or answer, and no equitable relief is prayed, the issues are strictly legal, and the decision on the facts of the court sitting as a jury is binding on the appellate court and the evidence cannot be considered *de novo* on appeal.

2. **DEED: Re-executed: Self-Serving: No Objection.** Whether or not a deed, reciting that a former and lost deed was made to a husband and wife, made to the surviving wife ten or twelve years after the husband's death, without the knowledge of his heirs, was an inadmissible self-serving declaration on the part of the wife and was mere hearsay in the partition suit between the heirs of the husband and the grantee of the wife, will not be decided on appeal, where said appellant heirs made no objection at the trial to the introduction of said deed in evidence.

3. ————: ————: **Inadmissible: No Objection: Probative Force.** Inadmissible evidence, including hearsay, admitted without objection,

Sawyer v. French.

is not a nullity or void of probative force, but is to be given its natural probative effect as if it were in law admissible. A recital in a deed that a former deed to a husband and wife had been lost and that it was made in re-execution of said former deed and made to the surviving wife, if admitted in evidence without objection, is to be given its natural probative effect that the former deed was a deed to the husband and wife and created an estate by the entirety, although the re-executed deed was made in the absence of the husband's heirs.

4. **DEED BY ENTIRETY: Mortgage and Taxes Paid by Husband: Estoppel.** It does not follow that, because the husband paid for the land, or gave his note therefor and subsequently paid it, either by himself or his administrator, where he had the land conveyed to himself and his wife as tenants by the entirety, the wife will be estopped to claim her rights as such tenant. Where there is a recital in a deed that a former lost deed had been made to a husband and wife and that it was made in re-execution of said former deed and made to the surviving wife, the fact that, before said re-execution deed was made, the wife had, as administratrix of her husband's estate, paid a mortgage upon and special taxes assessed against the property, out of estate funds, and that it was inventoried as a part of his estate, does not estop her or her grantee to claim that said property was not the property of the husband and did not descend to his heirs; especially should this be the ruling where there is no showing that the mortgage note was not his note alone, for if it was his alone it was her right and duty, as administratrix of his estate, to pay it with the funds of his estate.

5. ———: ———: ———: **Usual Course: Provision for Wife.** It is entirely consistent with the usual course of things for the husband to pay, or intend to pay, for land and encumbrances thereon which he has caused to be conveyed to himself and wife; and if the mortgage note was signed by him alone, she is in no wise estopped to claim the land as the surviving tenant by the entirety by the fact that, after his death, she, as the administratrix of his estate, paid the note with the moneys of the estate. Besides, in this case there was evidence, admitted without objection, that the deed to her and her husband was lost at the time of his death, and neither she nor her attorney knew until after the estate had been settled, and not until they learned the true facts from the grantor, that the deed conveyed the land to her and her husband.

Appeal from Jasper Circuit Court.—*Hon. Joseph D. Perkins,* Judge.

AFFIRMED.

*Hugh Dabbs* and *B. H. Esterly* for appellants.

(1)   The undisputed evidence shows that the·conveyance of the property in controversy to Emma French came about solely through the recollection of Mrs. Sarah A. Sawyer, as testified to by respondent's attorney, Mr. Hackney, that the original deed, executed in 1893, was to her husband and herself jointly.   Appellants insist that it would be impossible for Mrs. Sawyer to have had such recollection under the circumstances described.   It would be contrary to the recognized laws of nature.   The courts take judicial notice of the well known laws of nature.   16 Cyc. 854 (56); 7 Ency. Evidence, p. 902; The development of the faculty of memory may be judicially noticed.   7 Ency. Evidence, p. 908, note 32.   People v. Martin, 85 Hun, 343, 32 N. Y. Supp. 933.   (2)   Estoppel consists in holding for truth a representation acted upon, when the person who made it, or his privies, seek to deny its truth and to deprive the party who acted upon it of the benefit obtained.   16 Cyc. 723-724; Bigelow on Estoppel, p. 27; Chouteau v. Goddin, 39 Mo. 229; State Bank v. Frame, 112 Mo. 513; Fowler v. Carr, 63 Mo. App. 486; Spence v. Renfro, 179 Mo. 421; Union Savings Association v. Kehlor, 7 Mo. App. 158, 163; Boles v. Bennington, 136 Mo. 530.   Where a party has taken a position as to the ownership of property, in a proceeding in a court of record, he will thereafter be estopped from later taking an adverse position in another proceeding to the prejudice of parties to the former proceeding who relied upon the position formerly taken and would be injured were the adverse position maintained.   16 Cyc. 684.   One who, with knowledge of the facts and without objection, suffers another to make expenditures on or in connection with his property under a claim of title thereto will be estopped to deny such title or right to the prejudice of that other who has acted in reliance on and been misled by. his conduct.   16 Cyc. 765; Craddock v. Short,

134 Mo. 449; Goods v. St. Louis, 113 Mo. 257; Stevenson v. Saline County, 65 Mo. 425; Collins v. Rogers, 63 Mo. 515.

*Howard Gray* for respondent.

(1) The trial court heard the conflicting testimony and found for the respondent, and this court will not weigh that testimony. St. Louis Union Trust Co. v. Hill, 223 S. W. 434; State ex rel. v. Sturgis, 276 Mo. 570, 208 S. W. 458; McGinnis v. Railroad, 268 Mo. 667; Gilbert v. Railroad, 226 S. W. 263. (2) The question of estoppel is not in this case, as it was in no wise suggested by the pleadings. When the defendant set up title to the lots and the record showed a legal title in her, if the appellants desired to raise the question of estoppel, they should have done so in their reply. Compressed Air Co. v. Fulton, 166 Mo. App. 11; McClure v. Bank, 263 Mo. 128; Dibert v. D'Arcy, 248 Mo. 617; Sanders v. Chartrand, 158 Mo. 352; Swinehart v. Railroad Co., 207 Mo. 423. (3) The appellants cannot claim that the testimony on estoppel was admitted without objection, and therefore, the objection that it was not alleged in the reply unavailable, for the reason that all the testimony offered and which appellants now claim tended to prove an estoppel was pertinent under another issue. Swinehart v. Railroad Company, supra. (4) Outside of the question of pleading, there are no facts in the case on which to base a question of estoppel. The only testimony is found in the first annual statement of Mrs. Sawyer as administratrix of her husband's estate wherein it appears that a mortgage upon this property was paid out of the personal assets of the estate. This same settlement shows that the principal of a mortgage on the farm was also paid out of the personal assets. Mrs. Sawyer only had a dower interest in that farm and her liability was one-third of an annual interest on that mortgage, Fuller v. Devolld, 144 Mo. App. 43, and yet the whole principal was paid out of the personal property in which

she had an undivided one-tenth interest absolutely. Again, this was only an annual settlement and what was done on final settlement relative to this matter the record does not disclose. Again, it is an elementary principle in order for an estoppel to be available, the parties urging it must have been misled or induced to do something which they would not have done. The children were all of age and undoubtedly wanted their mother to have the home free of encumbrance, and it is unreasonable to say that even if they had known the deed was made to her and her husband, they would have protested against the payment of the mortgage. Parties invoking an estoppel must establish their case by clear, precise and unequivocal evidence. Northrup v. Colter, 150 Mo. App. 639.

SMALL, C.—Suit in partition. The parties are the nine children and heirs of Benville A. Sawyer, who died intestate in 1893. He also left a widow him surviving, Sarah A. Sawyer, the mother of his said children. The land, sought to be partitioned, consists of a farm of eighty acres, and two lots, both improved, one having a store building, and the other a residence thereon, both situated on Garrison Avenue in the city of Carthage in Jasper County. The widow died in February, 1917. John H. Sawyer, a son, and two other of said children are the plaintiffs, and Emma French, a daughter, and five others are the defendants.

The petition is in the usual statutory form of petitions for partition, alleging that plaintiffs and defendants are the owners, as tenants in common, of the said lots in the city of Carthage, each owning an undivided one-ninth interest therein, and certain interests in said farm. That the property is not susceptible of division, etc. Whereupon, plaintiffs pray that the property be sold in partition and the proceeds divided according to the respective rights of the parties.

The answer of defendant Emma French consists of a general denial, and a further allegation and affirm-

ative defense that she is in the open, notorious and exclusive possession and the sole and exclusive owner of said city property, and the other parties have no right or title therein, and she prays to be discharged with her costs. The other defendants filed no pleading.

The reply put the answer of defendant Emma French in issue.

At the trial, there was no dispute that all the parties were owners of the farm, as stated in the petition. The sole controversy was as to the ownership of the Carthage property. The defendant Emma French claimed to own this property by virtue of a deed made to her by her mother, dated September 29, 1905. The appellants claim this deed conveyed no title to Emma French, because their father was the sole owner of the property by deed made to him alone, at the time of his death, which deed, however, was never recorded, but was lost after the father's death, while in possession of the mother. Where as, the defendant Emma French claims, that said lost deed was not a deed to the father alone, but to him and his wife, Sarah A. Sawyer, as tenants by the entirety; that her mother having survived her father, she, having obtained a deed from her mother, as aforesaid, was the sole owner of the property.

The evidence, without serious contradiction, shows that both the farm and the city property were allowed by the children to remain in possession and use of their mother as long as she lived. That the deed to the farm was in the father's name alone, and was recorded before his death. That the widow was appointed administratrix of the estate of her deceased husband in 1893, and included in her inventory of the real property belonging to the estate of her deceased husband, which was subscribed and sworn to by her, the lots in question, which were subject to a deed of trust of $600, and interest. Her first annual settlement was made and approved August 14, 1894, and shows that with money belonging to the estate she paid off the incumbrance, amounting to $648.25,

on the property, and special taxes thereon amounting to $22.53. The final settlement is not shown in evidence.

Lenora E. Padfield, a daughter, who lived with her mother from the time of her father's death in 1893 until 1902, testified for plaintiffs that she saw the deed for the lots in question at home in her mother's charge, and it, as well as the deed to the farm, was in her father's name alone. Her mother's name was not in either of the deeds. During the time she lived with her mother she talked with her regarding the Carthage property, and her mother said it belonged to "us children and herself," "all the children had an interest in the property."

J. R. Sutter, a cousin of the parties, who resided in Kansas City, testified: That in 1899 he desired to buy the property in suit, and he went to his aunt, Mrs. Sarah A. Sawyer, and also the defendant Emma French, regarding the purchase of it. They (himself, Emma French and Sarah A. Sawyer) went to see the attorney of Mrs. Sawyer, Judge Kilgore, about it, and it was discovered that it was not possible to deliver a clear deed unless all the heirs would sign it, as he understood it. That was all that was said, except that there was no will left by his uncle, from the explanation offered him by Sarah A. Sawyer and Emma French and the attorney. The attorney said the only way the deed could be delivered was to bring a suit in partition. "We were all three present. I didn't see no deed."

"THE COURT: Was any statement made by Mrs. French or your aunt about who held the deed to that property at the time your uncle died? A. Yes, sir, that he held the deed and the fact that he left no will, left it subject to the heirs, and they weren't able to find some of them and I wasn't willing to make the purchase. They did not know where John Sawyer was, and neither did they know where Noah was."

George K. Sawyer, a son, testified for plaintiffs: That he had seen his sister Emma French a number of times since 1905, and that she never claimed to him to

have a deed to the property until after this suit was brought. None of his brothers lived in the vicinity of Carthage.

Amanda Green, a daughter, testified for plaintiffs: That in 1901, her mother visited her at her home in Wichita, Kansas, and also in 1905, 1910, 1911, 1913, 1914 and 1915, and remained several months each time, and on one occasion in 1913 her mother told her, "After father's death, in looking over his papers, I found that he had not recorded his deed from Joshua Haughawout to the property on Garrison Avenue, and when I found it, it scared me." In 1915, her mother told her that she deeded the property to Emma French, and she said, "I did it when I was so sick, and I saw my mistake shortly after I had done it."

David B. Sawyer, a son, testified for plaintiffs: That he lived in Colorado. That prior to his father's death, he went with him when he paid off a loan on the property to the Building & Loan Association. That within three or four days after his father's death he looked over his papers and saw the deed to the lots in question and read it. That it was a warranty deed, made and executed by Joshua Haughawout, as grantor, to his father, B. A. Sawyer, and his heirs, and that "my mother's name was not mentioned in the deed and was not joined as one of the grantees. There were deeds to other properties in the chest, and they were all in my father's name." That he called his mother's attention to the fact that her name was not in the deed, and she said, "No, that the law would give her her part and protect her interest." That his mother never claimed any interest except that of dower.

Defendant Emma French introduced testimony, in substance as follows:

B. F. Hackney, attorney for the administratrix, testified: That in going through the papers of the deceased, to prepare the inventory for the administratrix, he found the deed to the eighty acres of land and other old deeds,

but could find no deed to the property in question, and went to the Recorder's Office and failed to find any such deed recorded. That the widow was present when they searched for the deed, and sometime after the settlement of the estate "she sent for me and she was living with her daughter [Emma French]. She wanted that deed fixed up and I went and conferred with Mr. Haughawout and they agreed on that deed and fixed up what purported to be the re-executed deed. This (indicating) is the deed. Don't know where Mr. Haughawout is now. I made the settlement [as administratrix] for her. I attended to her legal matters. She went to Judge Kilgore a time or two. Didn't know the deed was around the house several years after the father's death. Never heard anyone claim it was. I went to see Haughawout several times and talked the matter over before the deed was re-executed, and then wrote up the deed at the request of the parties. At the time we supposed we were doing our duty to inventory these lots. I didn't think any controversy was up at the time. Mrs. Sawyer was leaving the matter with us. Whatever we put in [the inventory] was all right with her, but we had the papers and went through them carefully for the deed. The deed was made to Mrs. French in 1905, with the agreement to take care of her mother. They were then living over on Kellar Street, and soon after that she took her mother and went over on this property. Mrs. Sawyer said she wanted to make arrangements for her declining years. I think Mrs. Sawyer lived there except a short time she was in Wichita for a trip. I am satisfied she lived there until her death. Mrs. French was living there and handling the property, using it as her own." On cross-examination, this witness testified: "It was on my advice that Mrs. Sawyer paid off the mortgage and taxes on the property out of the funds of the estate. I didn't ask Mrs. Sawyer if the property belonged to the estate when I put it in the inventory. I supposed it did. The question of re-executing the deed came up anyhow ten years after the inventory was made.

Mr. Haughawout claimed it was made to the two—Ben ville A. Sawyer and wife. Mrs. Sawyer. wanted the deed fixed up. I took a notary out to her house and she made the deed to Mrs. French. All the time the rent from the property in question was collected by Mrs. Sawyer. I am satisfied she had the use of the Carthage property while she lived. We talked of the re-execution of the deed probably for three years. It might have been only a few months. Mrs. French had nothing to do with re-executing the deed.''

Defendant Emma French testified on her own behalf: She was the oldest child. ''From the time my father died, I never saw the deed they claim Haughawout made for this property. I never heard of its being in the house. It was always supposed to be lost.'' Her mother lived with her some months before she made the deed to her. ''She wanted to make provision for me to keep her for her lifetime. I took care of her and buried her with my own money. I remember going to Judge Kilgore's office.'' On cross-examination, she said: ''At the time I was at Judge Kilgore's office, the conversation was this deed between mother and Kilgore. I knew Mr. Sutter was thinking of purchasing the property. Q. The conversation was about as Mr. Sutter said? A. Yes, sir.''

Defendant Emma French then offered in evidence the re-executed deed. It was a quit-claim deed from Joshua D. Haughawout and wife to Sarah A. Sawyer, surviving wife of Benville A. Sawyer, deceased, dated September 19, 1905, recorded September 21, 1905, conveying the property in question, and reciting: ''The above described grantors, Joshua D. Haughawout and wife, Hettie E. Haughawout, heretofore about the —— day of ——, 1893, executed, acknowledged and delivered to Benville A. Sawyer and Sarah A. Sawyer, husband and wife, a deed whereby grantors conveyed to said Sawyers the above described lots, which said deed has been lost; and this deed is now made as a re-execution of the former deed, and is made to Sarah A. Sawyer the survivor.''

Said defendant also introduced in evidence the deed to her made by her mother. It was dated 29th of September, 1905, and recorded September 21, 1905. It was a warranty deed, consideration one dollar, "upon condition" that grantee supports her mother during the mother's life "and upon performance of this condition, this conveyance to become absolute, but upon failure to perform said condition" the property to revert to the grantor. There was no objection to any of the testimony introduced.

This was all of the evidence. Thereupon, plaintiffs asked the following declaration of law, which the court gave:

"An action for partition is not one for recovery of lands, within the statutes of this State, providing that no action for such recovery shall be maintained unless the plaintiff or the person under whom he claims was possessed of the premises within ten years before the commencement of the action."

The trial was had February 25, 1918. Afterwards, before the court rendered its decision, defendant Emma French offered in evidence a quit-claim deed by two of the parties, George K. Sawyer and Amanda Green, conveying to her for a consideration of $96.50, two undivided ninths of a portion of the property. This deed was dated October 1st, 1898, and recorded April 29, 1903, and conveyed the undivided two-ninths, "being our interest as heirs at law of Benville A. Sawyer (deceased)." It was acknowledged before W. H. Kilgore, notary public, Jasper County, Missouri, on the 5th day of October, 1898.

On December 21, 1918, the court found the issues and rendered judgment as to the property in dispute in favor of defendant Emma French, and after unsuccessfully moving for a new trial plaintiffs appealed to this court.

I. The pleadings in this case are at law, no equitable features are alleged, either in the petition or the answer, and no equitable relief is prayed for. The issues, there-

**Action at Law.** fore, are strictly legal, and the case having been tried by the court sitting as a jury, we are bound by the decision of the lower court on the facts, and cannot consider the evidence in the case *de novo*. [Koehler v. Rowland, 275 Mo. 573, and cases cited; Bank v. Wilson, 222 S. W. (Mo.) 381.]

II. It is strenuously argued by appellants' learned counsel that the re-executed deed dated September 19, 1905, recorded September 21, 1905, from Haughawout and wife to Sarah A. Sawyer, reciting that **Self-Serving Deed: No Objection.** the former and lost deed was made to Benville A. Sawyer and Sarah A. Sawyer, husband and wife, is of no probative force to show a conveyance to the wife as one of the tenants by the entirety, but is evidence that the husband was the grantee; that the recital in said deed having been made ten or twelve years after her husband's death, and without knowledge or consent of his heirs, is an inadmissible self-serving declaration on the part of Mrs. Sawyer, and mere hearsay as to said heirs, and of no probative force as against them. We cannot agree to this argument. Whether it was admissible, we need not pass on. No objection was made to the introduction in evidence of said re-executed deed at the trial of the case. The appellants cannot, therefore, complain in this court on appeal that the deed was inadmissible as evidence. [Bank of Commerce v. Pierce, 280 Mo. 614.]

III. But learned counsel of appellants argue that, although it was admitted without objection, its character as hearsay as to them and as self-serving as to Mrs. Sawyer, deprives it of all probative force in her favor or in favor of her grantee, Emma French. **Inadmissible Evidence: Probative Force.** We cannot concur in this contention. Inadmissible evidence (assuming it to be such), including hearsay evidence, admitted without objection, is not a nullity or void of probative force, but is to be given its natural probative effect as

290 Mo.—25

if it was in law admissible. [10 R. C. L. secs. 197 and 198, p. 1008.] This is true, even in a criminal case.

In Diaz v. United States, 223 U. S. 1. c. 450 (a criminal case), the court said: "So, of the fact that it was hearsay, it suffices to observe that when evidence of that character is admitted without objection it is to be considered and given its natural probative effect as if it were in law admissible. [Damon v. Carrol, 163 Mass. 404, 408; Sherwood v. Sissa, 5 Nev. 349, 355; United States v. McCoy, 193 U. S. 598; Schlemmer v. Buffalo Ry. Co., 205 U. S. 1, 9; Neal v. Delaware, 103 U. S. 370, 396; Foster v. United States, 178 Fed. 165, 176.]"

This deed differs widely from the re-executed deed passed on by the court in Langley v. Kesler, 57 Ore. 281, cited by counsel from 2 Jones's Blue Book on Evidence, page 550. In that case, the re-executed deed recited that the original deed was made to the husband alone, that he alone bought and paid for the property, but intended to have the deed made to himself and wife as a gift to her, but by mistake it was made to him alone. The court ruled that the title was effectually conveyed to the husband alone by the original deed, in law and equity, as shown by the recitals in the re-executed deed, and, therefore, the grantor had no further title to convey, and the mere acceptance by the husband of the re-executed deed from the original grantor to himself and wife, gave the wife no title and deprived the husband of none; that his intention to make her a gift could only be effected by a deed from him after the original deed was made to him. That case, therefore, has no relevancy to the case here, where the recital of facts on the face of the re-executed deed shows that the original deed or title was made to both the husband and wife.

We must, therefore, rule, that the re-executed deed in this case, having been admitted without objection, the recitals therein were evidence that the lost original deed was made to the husband and wife and conveyed to them an estate by the entirety.

IV. But, it is further argued that, because the land in question was inventoried as land belonging to the husband's estate with Mrs. Sawyer's knowledge and consent, as administratrix, and a $648 mortgage and $22 special taxes thereon were paid off by her as such administratrix with the funds belonging to the estate or heirs, both she and her daughter, Emma French would be estopped to claim the property was not the property of her deceased husband and descended to his heirs. We do not agree to this contention. It does not follow that because the husband pays for the land, or gives his note therefor, and subsequently pays it, either by himself or his administrator, where he had the land conveyed to himself and his wife, as tenants by the entirety, that his wife would be estopped to claim her rights as such tenant. It does not appear in this case, that the note paid off was not the note of the husband alone. If so, it was her right and duty, as administratrix, to pay it off with the funds of the estate. This would in no way estop her to claim the land as tenant by the entirety. It is entirely consistent with the usual course of things, for the husband to pay, and intend to pay, for land or encumbrances thereon which he has caused to be conveyed to himself and wife, as tenants by the entirety. The evidence does not conclusively show that Mrs. Sawyer, as administratrix, could not legally pay off the encumbrance with the funds of the estate, although the title might have been in her as surviving tenant by the entirety.

Furthermore, the deed was lost and could not be found at the time of the husband's death, according to respondent's evidence, and both the wife and her attorney no doubt supposed at that time that the title was in the husband alone, and Mrs. Sawyer may not have learned the exact fact as to how the deed was made until about the time of the making of the re-executed deed, when she and her attorney interviewed the grantor, Haughawout, on the subject and he informed them that the original deed was made to both her husband and

*Margin note:* Estoppel.

herself, as tenants by the entirety. This evidence also was admitted without objection. The conversation with Haughawout was in 1905 or perhaps 3 years before. So also, therefore, Mrs. Sawyer may not have known definitely that she had title to the property in 1899 when she, in effect, told the witness Sutter, in the presence of Emma French, that the deed to the property was in her husband's name, and that all of the heirs would have to join in the deed to give him a good title in case he purchased. For the same reason Emma French might not have known that her mother owned the property, when in 1898 she took a quit-claim deed from her brother and sister for a two-ninths interest as the heirs of their father. The probate court records, shown in evidence, and admissions of Mrs. Sawyer to Sutter, were no doubt evidence that the original deed was to her husband alone, but not conclusive evidence, nor conclusive as an estoppel against her subsequently claiming as tenant by the entirety, when she ascertained the fact that the original deed was made to her and her husband as such tenants.

The court below having found against the appellants, this court, on this appeal, can only consider the evidence of the respondent, and evidence of plaintiffs admitted to be true, and the undisputed record evidence, because it was the province of the lower court—as a jury —to pass upon the weight and credibility of the verbal testimony given by the plaintiffs' witnesses, and that court having found against them, we are concluded by that finding. So that, we hold, that there is nothing in the respondent's testimony or the admittedly true evidence of the plaintiffs, or the record evidence in the case—the only testimony we are permitted to consider—to necessarily and as a matter of law overcome the probative force of the re-executed deed made by Haughawout and wife, reciting that the original deed was made to Mrs. Sawyer and her husband, as tenants by the entirety. The weight and probative force of such recital, said deed having been admitted without objection, was for the trial court, sitting as a jury, in view of all the facts

and circumstances in the case, and we cannot disturb its verdict thereon.

Finding no reversible error in the case, we affirm the judgment of the lower court. Let it be so recorded. *Ragland, C.,* concurs; *Brown, C.,* absent.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court. All of the judges concur, except *Woodson* and *Graves, JJ.,* who dissent.