RETTA CRAMPTON, GLADYS FOSTER, TESSIE LOU SARGEANT, ETHEL SPIEGEL, MARY FORSYTHE, ALICE SARGEANT BOURNE, RUTH SARGEANT CONOVER, HELEN SARGEANT SHERAR, WILLIAM C. SARGEANT, HOWELL V. SARGEANT, and ISADORE E. DELAPPE v. ETHEL E. OSBORN and ERMINA E. DARROW as Administratrix with the will annexed of the Estate of HERMAN S. BAKER, Deceased, Appellants.—No. 39937.—201 S. W. (2d) 336.

Division One, March 10, 1947.

Rehearing Denied, April 21, 1947.

*R. H. Davis* and *Roy Coyne* for appellants.

126

*Watson & Richart, Ray E. Watson, F. H. Richart* and *Rex B. Titus* for respondents.

CLARK, J.—Suit to contest the will of Herman S. Baker, deceased, brought by his heirs against Mrs. Osborn, sole beneficiary named in the will, and Mrs. Darrow, administratrix with the will annexed. The jury returned a verdict that the document was not the will of Herman S. Baker, deceased; judgment was entered on the verdict and Mrs. Osborn has appealed.

It is not disputed that the will was validly executed by Baker while of sound mind and without being unduly influenced. The sole issue upon which the case was tried was whether he later revoked the will by canceling, tearing, or obliterating the same with intent to revoke.

The will was executed on May 21, 1914. At that time Mrs. Osborn was the wife of Baker and they were living together in Webb City,

Missouri. Baker procured a divorce on November 27, 1918. Mrs. Osborn, the appellant, was married twice before and twice after her marriage to Baker. At the time of the trial she was living with her fifth husband, Osborn, in Winfield, Kansas. Baker died May 19, 1944, a resident of Jasper County, Missouri. Mrs. Darrow, his only heir who lived in Missouri, was appointed administratrix and, in company with three appraisers appointed by the probate court, made a search and found no will. On June 2, 1944, appellant presented the will to and had the same admitted to probate by the probate court, after which Mrs. Darrow was appointed administratrix with the will annexed. The will was introduced in evidence and inspected by the jury. The testimony clearly shows it was somewhat torn and mutilated. In passing on objections to testimony, the court at one time said; "Well, it is obvious it is in bad shape" and, again, "We all can see it is in bad shape."

Mrs. Duncan, the clerk of probate, testified that the will was in the same condition when offered for probate as at the trial except for some transparent tape which she had affixed to the will. She said; "It was in such a fragile condition I thought to preserve the record I would place some tape on it to hold it together, . . . in several places it was torn and I was afraid it would come entirely in two and before I recorded it I fixed it so it would be a permanent record. . . . as I unfolded it; it fell almost apart in a place or two and I taped it." She said part of the cover was missing. She attached six strips of tape on the cover and five strips on the will, and there were other torn places not covered by tape. [The entire will with attesting clause and signatures is contained on one page.] She also said there were a number of spots over the surface of the will and that it was in a "Crinkled" or "Crumpled" condition.

Mr. Tamblin, testifying as an expert on questioned documents, said that an examination of the paper showed that it had been "crumpled up, or wadded up;" that age alone would not produce this condition, but it would require some physical force.

Respondents introduced the depositions of Mrs. Berrian and Mrs. Crampton, taken in the State of California. Mrs. Berrian testified that, about the time he procured the divorce, Baker told her that he tore the will up and told his wife that he was not going to leave her a dime and he accompanied the statement with a gesture as of crumpling a paper. Mrs. Crampton testified that in 1929 Baker told her that about the time he filed the divorce suit he tore up his will and threw it in the waste basket; that he later learned that his wife had recovered the will and "in order to have her clear of him he gave her $1,000.00 and she promised to burn the will."

Respondents introduced the proceedings in the divorce suit brought by Baker in October, 1918. The petition charged appellant with adultery with a person named and improper conduct with others

not named. Appellant was personally served, but filed no answer and a decree was entered on November 27, 1918, granting Baker a divorce.

Respondents introduced in evidence a check for $1,000.00 given by Baker to appellant on November 11, 1918, and cashed by her.

Mrs. Corner testified that in 1937 Baker told her he did not intend to leave any of his property to his ex-wife.

Mr. Cochran testified that a day or two before his death Baker told him that at one time he had made a will, but "that this will had been settled and that he destroyed his will and that he had paid some money."

Mr. Regan testified that in 1944 Baker told him, "I have destroyed my will. I have paid the penalty. I have folded up that will and tore it up and threw it in the waste basket."

For appellant: Mrs. Youstler testified that in May, 1944, appellant came to her home in Joplin and showed her the will; that it then had no strips of tape on it and was not torn.

Mrs. White testified that in May, 1944, appellant came to her home near Jasper, Missouri, and showed the will to her and her husband; that the will was then creased heavily, but not torn so much as when presented at the trial. It was developed that the best route from Joplin, where the will was shown to Mrs. Youstler, to Jasper, is through Carthage where the will was later probated. Jasper is ten or twelve miles north and Joplin about eighteen miles southwest of Carthage. Mr. White gave testimony similar to that of his wife. The Whites were good friends of appellant and Mr. White had roomed in her home for some time before his marriage and after appellant was divorced.

Mrs. Patton testified that Baker told her that he had sent flowers to appellant after the divorce and after she had remarried, and that he had provided for her. She also said appellant exhibited the will to her in April or May of 1944 and it was heavily creased, but not torn.

Mrs. Rozelle testified that in 1939 Baker told her he had his estate fixed and that witness knew how because she had seen the will. She also said appellant showed her the will, in 1920, and again before it was probated and that it was not torn. On cross examination she admitted that the will was breaking through in places and she advised appellant to have a photostatic copy made.

Mr. Fisher testified that about a week before he died Baker said, "I am slipping; and I am slipping fast; my will is made and it is laying in the bank." Witness also said that on two or there occasions he had mailed letters for Baker which he had written to his ex-wife, the appellant.

Mrs. Sturgis testified that a short time before he died Baker told her ". . . when I pass on I want Ethel [the appellant] to have all I have got."

Appellant testified that about two years after the divorce a lawyer who is now dead called her to his office and gave her the will. That she kept it in a safe deposit box in a bank in Winfield, Kansas, part of the time, and took it with her in a suit-case or purse on various trips. She denied that Baker ever tore the will and said he knew she had it and told her to keep it in a safe place. She said she received letters from Baker and that he sent her flowers every Easter. That Baker gave her the check for $1,000.00 for her equity in some real estate. She said Baker was very "close" in financial matters and other witnesses testified to the same effect. She kept none of Baker's letters. She showed the will to several persons and had a photostatic copy of it made before offering it for probate.

In her brief in this court appellant makes twelve assignments of error. Some of them which we think are not properly preserved for review will be first noticed. Assignment number three claims error in the admission of the depositions of the witnesses Berrian and Crampton, and number eight relates to the evidence as to the marriages of appellant. We find no objection to this testimony in the record [except that objection to a portion of the depositions was sustained and that portion was not read to the jury and is not considered by us]. Assignment number two, complaining of evidence as to the $1,000.00 check, and that part of number eleven objecting to respondents' instructions number 2 and 4, are not briefed and are therefore abandoned; also, the assignments are too general to entitle appellant to have them reviewed. [Langston v. Howell County, (Mo.), 108 S. W. (2d) 19.] Assignment number five charges error in refusing to permit appellant to testify as to the charges contained in the divorce petition, and assignment number six charges error in refusing appellant's offered evidence as to her reputation for chastity and morality. Neither of these assignments is briefed and they are therefore abandoned. However, later discussion herein will indicate our view that these matters are not in issue. Assignments nine, ten and twelve are to the effect that appellant did not have a fair trial, and that the court erred in overruling her motion for a directed verdict and her motion for a new trial. These assignments are too general to preserve anything for review, but will necessarily be decided by our conclusions on the whole case.

Assignment number seven complains of the exclusion from evidence of a photostatic copy of the will. Appellant cites cases holding that objections to evidence must be certain and specific. The objection made by respondents' counsel was "that the original will has already been offered in evidence and is the best evidence and for the further reason that the photostatic copy would not show the condition of the will at the time the photograph was taken." Then the court asked "For what purpose do you desire to offer it?" And appellant's counsel replied "The purpose is to corroborate the other

134

witnesses' testimony." Certainly, the original will was the best evidence. If appellant's counsel meant that the copy would tend to corroborate her witnesses who testified to the condition of the will when exhibited to them shortly before it was probated, we doubt that a photograph would accurately show the condition as to the will being crumpled or torn. However, we have examined the photostat which was offered and find that it does show considerable creases, both horizontal and perpendicular, and in some places in and across the creases seems to indicate a partial or complete severing of the paper. It also shows a great many spots or smears. We hold that the court did not err in rejecting this exhibit. [Home Ins. Co. v. Savage, 231 Mo. App. 569, 103 S. W. (2d) 900.]

That part of assignment number eleven which we have not already discussed relates to the modification by the court, and giving as modified, of appellant's instruction D-2. This instruction as offered by appellant, in substance, stated that the petition and judgment of divorce did not have the effect of revoking the will, etc. To this the court added, "but such evidence is to be considered by you only in connection with the question of his state of mind or intention in tearing or destroying said will, if you find or believe from the preponderance or greater weight of the evidence that he did tear or destroy said will."

Assignment number one claims error in the introduction of the proceedings in the divorce case, and assignment number four objects to the court's action in permitting Corner, Cochran, and Regan to testify to Baker's declarations as to the alleged destruction of the will.

The last three assignments mentioned, numbers one, four, and eleven, frame the issues which we must decide, to wit; Was there substantial competent evidence that Baker revoked his will by tearing or obliterating it? And, Was the evidence of his subsequent acts and declarations admissible to show his state of mind or intent?

So far as we can find, the precise legal questions involved here have never been decided by an appellate court of this state. In other jurisdictions there is a wide diversity of opinion on some of these questions.

We think appellant has misconceived the theory on which the case was tried and the issues involved on appeal. Her counsel contend, and cite cases to show: that a divorce is not ground for contesting a will; that the failure of appellant to file answer and contest the divorce suit does not admit the truth of the charges so far as the instant suit is concerned; that the divorce decree is not res judicata of the issues here; that the common law doctrine of implied revocation of a will has been supplanted by statute in Missouri. All that is conceded by respondents and by us.

Section 521, Revised Statutes Missouri 1939, [Mo. R. S. A.] provides: "No will in writing . . . shall be revoked, except by a subsequent

will, in writing, or by burning, canceling, tearing or obliterating the same, by the testator, or in his presence, and by his consent and direction.''

''Any act of tearing which is manifest upon the paper on which the will is written, however slight it may be, is an act of tearing within the meaning of the statute, if done with the intention of revoking the will.'' [Page on Wills, Vol. I, page 772, section 428. (See Burton v. Wylde, 261 Ill. 397, 103 N. E. 976.)]

''By tearing, as used in the statutes, is not meant, necessarily, a literal tearing to pieces. The slightest act of tearing with intent to revoke the whole will may be sufficient for the purpose.'' [68 C. J., page 818, section 514.]

In the instant case there is no doubt that the will was considerably crumpled and somewhat torn when produced at the trial. There was certainly substantial, and we think conclusive, evidence that it was in the same condition when presented for probate. Mrs. Duncan, the probate clerk, so testified and her testimony was unshaken. Appellant tried to create a different impression by the witnesses to whom she exhibited the will just prior to probate, but the fact that she thought it advisable to thus bolster her case in advance and was advised to and did procure a photostatic copy indicates that there was something wrong with the condition of the will.

There was opinion evidence from Tamblin, who qualified as an expert, that the mutilated condition of the will could not have been caused by age alone, but was due to physical force. Such force, if any, must have been applied by either Baker or appellant. Appellant had no motive for destroying the will and positively denied that she did so. The testimony, by depositions, of Mrs. Berrian and Mrs. Crampton, is to the effect that Baker said that about the time he filed the divorce suit he tore the will and threw it in the waste basket with intent to destroy it; that afterward he learned appellant still had the will and paid her $1,0000.00 to destroy it. This was hearsay, but the record discloses no objection to it either at the taking of the depositions or at the trial. In 20 Amer. Juris., page 1036, section 1185, it is stated: ''It is the generally prevailing rule that relevant evidence received without objection may properly be considered, although it would have been excluded if objection had been made.'' That statement has the approval of this court notwithstanding an observation to the contrary in the case of Childers v. Pickenpaugh, 219 Mo. 376, l. c. 436, 118 S. W. 453. That case, decided in division one in 1908, without citing authority or giving a reason, says that hearsay testimony has no probative force whether objected to or not. In 1921, this court, in banc, in the case of Sawyer v. French, 290 Mo. 374, l. c. 385, 235 S. W. 126, held that hearsay testimony, admitted without objection ''is to be given its natural probative effect . . .,'' citing cases from state and federal courts. Two judges dissented without opinion.

Sawyer v. French was cited with approval in Flint v. Sebastian, 317 Mo. 1344, 1. c. 1364, 300 S. W. 798.

 The condition of the will itself furnished some indication that it had been mutilated. The depositions of Berrian and Crampton, not objected to, constituted evidence that the damage to the will was purposely done by Baker and with intent to revoke it. The proceedings in the divorce suit were received in evidence, not for the purpose of proving the fact of revocation nor to prove the charges contained in the divorce petition, but as evidence of Baker's state of mind at or about the time he is said to have damaged the will, and the jury were instructed to consider it on that issue only. So far as indicating his state of mind is concerned, Baker's sworn petition making serious charges against appellant and filed in court as a public record is not hearsay. True, as complained by appellant this evidence may have tended to sway the jury against her, but, if competent for any purpose, its prejudicial effect would not authorize the court to exclude it. [Erickson v. Lundgren (Mo.) 286 S. W. 120; Jablonowski v. Modern Cap Mfg. Co., 312 Mo. 173, 279 S. W. 89.]

 Testimony as to other declarations of Baker, related by witnesses Corner, Cochran, and Regan for respondents, and by appellant and some of the witnesses on her behalf, are hearsay and were not admissible to prove or disprove the fact of revocation. Whether they were admissible for any purpose is a question upon which there is a marked difference of opinion. On this point appellant, in the argument portion of her brief, relies upon the following: Throckmorton v. Holt, 180 U. S. 552, 45 L. Ed. 663; Schierbaum v. Schemme, 157 Mo. 1, 57 S. W. 526; Teckenbrock v. McLaughlin, 209 Mo. 533, 108 S. W. 46; Gibson v. Gibson, 24 Mo. 227; In re Kennedy's Will (N.Y.) 60 N. E. 442; In re Rowe's Estate, 165 N. Y. Supp. 1064; Caeman v. Van Harke, 33 Kan. 333, 6 Pac. 620; Prinz v. Schmidt (Ill.) 166 N. E. 209; Miles v. Long, (Ill.) 174 N. E. 836; Walsh v. Walsh, 219 N. W. 639; In re Allen's Estate (Calif.) 171 Pac. 686; Woodruff v. Hundley, (Ala.) 29 So. 99; Allen v. Scruggs, 67 So. 301. The Throckmorton case was decided in 1900 by the United States Supreme Court. The gist of the decision is that declarations and letters of one whose alleged will is attacked as a forgery, when not part of the res gestae, are not admissible, whether made before or after the date of the will, to show the improbability of his making such a disposition of his property as that which is in question. The opinion contains an extensive discussion of the subject and cites many cases both for and against the admissibility of such testimony. The New York cases above listed seem to hold that declarations of a testator are inadmissible unless they are a part of the res gestae and a similar result was reached in cases from other states cited by appellant. A similar doctrine is announced in some text books. None of the authorities cited by appellant is precisely in point on the question

now under consideration, although statements made in some of them lend support to appellant's contention. We turn now to the Missouri cases cited by appellant. Gibson v. Gibson held that declarations of a testator that he never made a will; that if he signed it he was drunk and was made to do it and that he had no recollection of it were not admissible. The issue there was undue influence. There is an extensive discussion as to the competency of such declarations and the final result reached is, we think, that they are not to be received as proof of the facts stated, but, under certain circumstances, may be received as bearing upon the intent or state of mind of the testator. The opinion has been so interpreted in some of our later decisions. Schierbaum v. Schemme was a will contest in which the mental capacity of the testator was at issue. We approved the refusal of the trial court to admit certain declarations for the reason, as shown at 157 Mo. page 17, the real purpose of the offer was to prove the facts stated in the declarations and not the state of mind of the testator. Techenbrock v. McLaughlin reviews previous cases including Gibson v. Gibson and holds that when the state of affections of the testator is in issue his declarations may be admitted upon that point, but not to prove the truth of the facts narrated.

The facts in Burton v. Wylde, 216 Ill. 397, 103 N. E. 976, cited by respondents, are like those in the instant case. There a will had been partially mutilated and torn. The court held that the testator's declarations at the time of the act were admissible as res gestae, and that his subsequent declarations were admissible to show his intent. This court reached the same result in Hamilton v. Crowe, 175 Mo. 634, 75 S. W. 389. Many cases are reviewed in 79 A. L. R., and, at page 1503, subdivision IV, it is stated: "The weight of authority is to the effect that declarations of the testator, although not made at the time of the alleged act of revocation, by mutilation, cancelation or destruction of the will, are admissible to show the intent with which the testator performed such act." [See also Page on Wills, Vol. II, page 734, section 879.]

Some of the cases cited in the briefs concern questions of showing undue influence, or of modification, or interpretation of a will, by subsequent declarations of a testator. Such questions are not in the instant case. A will is not effective until the death of the testator. At any time during his life a testator may revoke his will for any cause, or for no cause; but he cannot revoke it by a mere declaration that he has done so and, after his death, the fact of revocation cannot be proved by such a declaration alone. He can validly execute a will only in a certain manner and he can revoke it only by one of the statutory methods, to wit, the execution of a later will, or the partial or total destruction of his will with intent to revoke it. If he totally or partially destroy his will the question arises as to whether he did so on purpose or by accident. His own acts or statements,

138

whether made at the time or later, would seem to be proper evidence of his purpose or intent in destroying or mutilating his will. Our conclusions are that where there is substantial independent proof, that a will has been wholly or partially destroyed by the act of the testator in any manner mentioned in the statute, his subsequent declarations are admissible upon the issue of his intent in performing the act.

In the instant case the will bore indication of mutilation. There was evidence, both inferential and direct, that the mutilation was purposely done by testator with intent to revoke. His divorce petition cast light upon his motive for mutilating his will. The truth of the charges in the divorce petition is not in issue here, for, whether true or not, the charges indicate his state of mind. His subsequent declarations were properly received and restricted to the question of his intent. The evidence conflicted and the determination of the facts was for the jury. The decree is affirmed. All concur.