Gayle BAIWIR (formerly known as Elsie Lou Findley), Plaintiff–Appellant,

James Michael Findley, Homer Edmond Findley, and Gary Findley, Plaintiffs,

v.

William E. MOODY, Carl Cutburth, Clyde (Larry) Cutburth, Patricia Yadon, Virginia Hutchings, Romadean Garrison, Richard Kelly, Ashley Cemetery, Bernadean Pete, Jim Fry and Teresa Maples, Defendants–Respondents.

No. 21070.

Missouri Court of Appeals, Southern District, Division Two.

June 25, 1997.

Mark C. Fels, Gregory J. Smith, Smith & Fels, P.C., James E. Miller, Springfield, for appellant.

Stephen L. Shepard, P.C., Springfield, for respondents.

PARRISH, Judge.

This is an appeal of a judgment denying a petition to contest a will admitted to probate in the Probate Division of the Circuit Court of Wright County, Missouri. The petition alleged that Homer Arvil Findley, deceased, revoked his will dated December 19, 1985, by causing, with his consent and direction, the document to be obliterated. The trial court found there was no evidence that the claimed obliteration of the will was accomplished by Homer Arvil Findley or in his presence by his consent and direction. This court affirms.

Appellant Gayle Baiwir, together with Gary Findley, James Michael Findley and Homer Edmond Findley, children and grandchildren of decedent (collectively referred to as plaintiffs), brought this action against named beneficiaries in the will. Plaintiffs' petition alleged that decedent revoked the will in its entirety prior to his death. The petition sought judgment declaring the will void and of no effect.

Following a trial without a jury, the trial court found:

> The controlling statute is Section 474.400, RSMo.,[ 1] which states as follows: "No will in writing, except in the cases herein mentioned, nor any part thereof, shall be revoked, except by a subsequent will in writing, or by burning, canceling, tearing or obliterating the same, by the testator, or in his presence, and by his consent and direction
>
> Plaintiffs contend that the will which was executed by Homer Arvil Findley on December 19, 1985, was effectively revoked by Homer Arvil Findley by obliteration. And plaintiffs further contend that Homer Arvil Findley intended to revoke his will of December 19, 1985, in its entirety.
>
> The court finds that plaintiff has failed to meet its burden of proof and that judgment should be entered for defendants on plaintiffs' petition for the following reasons:
>
> The only testimony from which physical obliteration could concluded [sic] is the testimony of Virgie Gist in which she stated in deposition testimony that she, at Mr. Findley's request, made a single pencil line through certain names in the will. The physical evidence in this case consists of the will of December 19, 1985, on which the names of all but one of the beneficiaries have been stricken out with blue ink. There was no visible evidence of a pencil line and no evidence of who may have used blue ink to cross out certain names in the will. The bulk of the text of the will remains unchanged, showing neither pencil lines nor blue ink. There was no evidence that the claimed obliteration, the physical evidence of which is blue ink, was accomplished by testator, or in his presence by his consent and direction.

Appellate review is undertaken pursuant to Rule 73.01(c). The trial court's decision will be affirmed unless there is no substantial evidence to support the judgment, the judgment is against the weight of the evidence, or it is the result of an erroneous declaration or application of law. *Nixon v. Greenlee*, 928 S.W.2d 917, 918 (Mo.App. 1996). The power to set aside a decree or judgment on the ground that it is against the weight of the evidence is to be exercised only when an appellate court has a firm belief that the decree or judgment is wrong. *Cockrum v. Cockrum*, 550 S.W.2d 202, 205 (Mo.App. 1977).

Appellant's first point alleges the trial court erred in entering judgment for defendants because the judgment was against the weight of the evidence and erroneously applied the law in two respects. She contends the evidence "was overwhelming" that the testator intended to revoke the will when "his sister, Virgie Gist, at his direction and in his presence, obliterated the names of all beneficiaries set forth in the will except that of Ashley Cemetery and one of Homer Findley's children which Virgie Gist inadvertently missed." She further contends "the evidence clearly established" that testator had access to his will after it was executed; that the obliteration or cancellation is presumed to

---

1. References to statutes are to RSMo 1986.

have been done by him with the intention to revoke the will.

Evidence was presented that testator had expressed dissatisfaction with his will. There was also evidence presented that testator did not express dissatisfaction with his will.

■ Regardless, a testator's intent to revoke his or her will is not sufficient without performance of an act of revocation.[2] "A symbolical burning, tearing, or destruction will not suffice. There must be the act as well as the intention." 79 Am.Jur.2d *Wills* § 542 (1975).

> At any time during his life a testator may revoke his will for any cause, or for no cause; but he cannot revoke it by a mere declaration that he has done so and, after his death, the fact of revocation cannot be proved by such a declaration alone.... [H]e can revoke it only by one of the statutory methods, to wit, the execution of a later will, or the partial or total destruction of his will with intent to revoke it.

*Crampton v. Osborn,* 356 Mo. 125, 201 S.W.2d 336, 342 (1947).

The only testimony concerning obliteration of the will was the deposition testimony of Virgie Gist. She was 84 at the time her deposition was taken. She testified that the testator called the attorney who prepared his will and kept it for him, asking that the will be sent to him. She explained what she did with the will after it was received.

She was asked, "Did [you] have some influence on what he decided to do?" Ms. Gist answered, "Well, he said, 'What are we'—No, I said, 'What are we going to do with it now?' And he said, 'Get a pencil.' He said, 'I'll come in there at the table and sit by you,' and he said, 'You read those names off. And everyone you read off,' he said, 'I'll tell you whether to mark it or not.' "

Ms. Gist stated in her deposition that she read names in the will and, when he told her to, marked through the names. She testified that she marked one pencil line through each

name she read; that she read all but one of the names in the will—she overlooked one— and he told her to mark through each of the names she read. The following questions and answers were read to the trial court concerning Ms. Gist's having marked on the will:

> Question: Did you do the marking?
>
> Answer: I done the marking.
>
> Question: Did you put a single line through them?
>
> Answer: I thought—I thought I just put one single line with a pencil, but somebody told me they're just marked all to pieces with other things but I never done it.
>
> Question: Well, so what did you do? You only put a single line through them?
>
> Answer: I thought I just put one line. I'm sure I never put over two, just with a common pencil. I thought it was—Not ink or anything. I thought it was just a common pencil.

The will that has been filed with this court as the one admitted to probate consists of 6 pages. The first two pages contain Articles I, II and III. Those articles state the disposition of the testator's property. Article IV, on page 3, authorizes the personal representative to do certain acts with respect to administering the estate, permits beneficiaries to refuse any interest in property bequeathed to them, and states how any property that is disclaimed would be distributed. Article V, on page 4, appoints a personal representative.

The bottom of each page of the will bears the signature of Homer A. Findley. The formal execution of the will appears on page 4, followed by attestations of two witnesses on pages 4 and 5 and a notary acknowledgment on pages 5 and 6.

The first page of the will has no obliterations. Page 2, which states how the estate is to be divided, has three numbered subparagraphs. The names of the persons designated as beneficiaries in subparagraphs (2) and

---

**2.** § 474.400 states:

No will in writing, except in the cases herein mentioned, nor any part thereof, shall be revoked, except by a subsequent will in writing, or by burning, canceling, tearing or obliterating the same, by the testator, or in his presence, and by his consent and direction.

(3) have been marked over from the top of the line on which they appear to the bottom with numerous blue ink marks. Descriptions of the identities of those persons, e.g., "daughter," "her son," "son," are marked out in the same manner. The name of the person appointed personal representative in Article V on page 4 of the will is marked through in the same way. There is no pencil mark visible anywhere on the will.

■ Appellant asserts as a defense to the will that it was obliterated by means of single lead pencil marks through names of designated beneficiaries made by Virgie Gist at the direction of the testator. "In a will contest case, the burden of proving revocation is on the party alleging the defense." *Cockrum v. Cockrum, supra*, at 206. The trial court found no visible evidence of pencil lines on the will or of who may have used blue ink to cross out parts of the will. That finding is supported by substantial evidence and is not against the overwhelming weight of the evidence. There was no erroneous application of law.

The second part of appellant's first allegation of trial court error asserts the trial court's judgment was against the weight of the evidence and erroneously applied the law because the evidence was that the will was accessible to testator after its execution and was found in a state of obliteration to show it had been revoked. Appellant contends the obliteration "is presumed to have been done by Homer Findley with the intention to revoke."

Appellant has cited no law that supports the presumption she relies on. She argues, however, that the same rationale should apply that applies when a will that had been in a decedent's possession during his or her lifetime cannot be found after the person's death. That rationale is explained in *McClellan v. Owens*, 335 Mo. 884, 74 S.W.2d 570 (1934):

The law is that if a duly executed will remains in the possession of the testator and after his death the will cannot be found, the presumption is that testator destroyed the will with intent to revoke it.

74 S.W.2d at 574.

■ Virgie Gist provided the only evidence concerning where the will was kept after the attorney who prepared the will mailed it to testator. She testified in her deposition that she kept the will in her purse; that the testator knew it was there. She was asked, "And he had access to that will if he wanted?" She answered, "Yeah."

There was no evidence concerning how Ms. Gist's purse containing the will was accessible to testator. There was no evidence that testator obtained the purse or the will from the purse after the will was placed there. At oral argument, appellant's attorney was asked if he was claiming decedent "went back" and made the obliteration himself. He responded, "No." He stated appellant did not know how the further obliterations were made; that "[t]here was no evidence really to account for that."

Appellant's attorney's response is consistent with the record before this court. This court finds no error in the trial court's failing to extend the presumption applicable to lost wills to the facts of this case. The trial court's finding that appellant did not meet her burden of proof is not erroneous. There was no erroneous application of law. The first point is denied.

■ Appellant's second point is directed to the trial court's overruling objections to testimony of three witnesses. She contends certain testimony of witnesses Virgie Gist, Marla Moody and Ellen Buttram concerning statements made to them by the testator was hearsay; that the trial court erred in overruling objections to that testimony. If the trial court's rulings were erroneous, which this court declines to decide, the rulings were not prejudicial in that the issue to which the statements were directed was the testator's intent to revoke his will. In view of appellant's failure to show a physical act performed by testator or at his direction that amounted to revocation of the will, *see Crampton v. Osborn*, 201 S.W.2d at 342, the trial court's ruling on the testimony of these

witnesses is of no consequence. The second point is denied. The judgment is affirmed.

MONTGOMERY, C.J., and CROW, P.J., concur.