Thomas E. Merrick, Respondent, v. Bridgeways, Incorporated, a Corporation, and C. A. Dougherty, Appellants, No. 42251—241 S. W. (2d) 1015.

Division Two, September 10, 1951.

*Herbert E. Barnard* and *Walther, Hecker, Walther & Barnard* for appellants.

478

*Henry G. Morris* for respondent.

480

BARRETT, C.—In this action by Thomas E. Merrick against Bridgeways, Incorporated and C. A. Dougherty, the lessor and driver of a tractor-trailer truck to recover damages for negligent personal injury the jury returned a verdict for $11,000. The truck and Merrick's 1946 Plymouth sedan collided near the intersection of U. S. Highway 40 and Highway 127 in Illinois on the 23rd day of December, 1948, about six o'clock in the afternoon. Highway 40 is an east and west preferential highway and Highway 127 is a north and south highway. Merrick was traveling east on Highway 40 and the truck was traveling west and both drivers saw one another approaching the intersection when each vehicle was more than 1000 feet away from the intersection. They both also saw a 1936 Plymouth sedan, driven by Joe Roberg, stop on Highway 127 about thirty feet north of the north line of Highway 40 and its blinker lights and stop signs. After Roberg's car had been stopped a second or two, long enough to change gears, he drove south into the intersection and when his car lacked about four feet of passing over the center line of the highway the truck struck the left rear of his car, proceeded west on Highway 40 and struck Merrick's automobile. According to Merrick's evidence the truck traveled up to and through the intersection, without giving any warning signals, at an unreduced speed of fifty miles an hour and when about twenty feet from his car, and 200 feet west of the intersection, suddenly veered over to the left side of the highway and crashed almost head-on

into his stopped automobile. According to Dougherty, he was traveling at a speed of about thirty-two miles an hour, reduced to twelve miles an hour by the time the truck collided with Merrick, and that Merrick did not stop and his automobile was struck when it was but fifteen to twenty feet from the intersection and not entirely in his traffic lane. The truck and Merrick's car stopped over 200 feet west of the intersection. The appellants' principal complaints upon this appeal concern the giving and refusal of instructions and the excessiveness of the verdict. There are, however, three preliminary questions which must be disposed of first.

 Months after the suit had been instituted Bridgeways, Incorporated became bankrupt and two trustees were appointed to take charge of its affairs. A suggestion of bankruptcy was filed and it is now insisted that the court erred in forcing the defendants to trial without substituting the trustees as parties and in refusing to permit proof of bankruptcy. It does not appear as plainly as it should from the record just what procedure was followed. The United States District Court in Michigan had jurisdiction of the bankrupt and its property and could have enjoined or stayed any proceeding which sought to enforce a lien upon the debtor's property. 11 U. S. C. A., Secs. 511, 516. However, the United States District Court could and undoubtedly did permit the prosecution of this action. Foust v. Munson S. S. Lines, 299 U. S. 77, 57 S. Ct. 90, 81 L. Ed. 49. It appears from the record that the original order in bankruptcy had been modified and appellants in their brief say, "Of course, leave of the United States District Court had to be obtained to avoid a contempt order but having obtained such leave then plaintiff was free to move to substitute and to go ahead." This action in no way interferes with any proceeding in bankruptcy (In re Adolf Gobel, Inc., 89 F. (2) 171) and it does not appear just how the appellants are prejudicially injured by the respondent's failure to substitute the trustees as parties. Hartough v. Safeway Lines, Inc., 288 Mich. 471, 285 N. W. 561; Van Heukelom v. Black Hawk Hotels Corp., 222 Ia. 1033, 270 N. W. 16. Whatever the future consequences to the plaintiff may be, substitution of parties was not compelled by the statute (Mo. R. S. 1949, Sec. 507.100(4)) and it is not pointed out why the appellants should have been permitted to prove the bankruptcy or how they were prejudiced in this action by the court's refusal to permit the proof.

 During the second day of the trial the court permitted the plaintiff to amend his petition by interlineation by adding an additional assignment of negligence. The defendants objected to the amendment and claimed surprise. It is now urged that the court erred in permitting the amendment which was not served upon them and which they say required a responsive pleading and an automatic continuance until they had time in which to meet the issue. It is

not necessary to go into this assignment extensively or into the question of whether the amendment was to conform to the proof or whether it introduced an entirely new element into the case. The appellants did not request a continuance (Mo. R. S. 1949, Sec. 509.500), the plaintiff did not offer any instructions based upon the amendment and it is not made to appear how the appellants were misled or prejudiced by the amendment or that the court abused its discretion in permitting the amendment. Davis v. Kansas City Pub. Serv. Co., (Mo.) 233 S. W. (2) 679, 683; White v. Sievers, 359 Mo. 145, 221 S. W. (2) 118; Mo. R. S. 1949, Secs. 509.490, 509.500.

In the course of the trial plaintiff's counsel, as a part of his case in chief, read various sections of the Illinois statutes, from the Illinois Traffic Act, to the jury and it is now insisted that the trial court prejudicially erred in permitting counsel to read them. We are not concerned here with the reading of reported decisions or of lawbooks in general to the jury. Lewis v. Barnes, (Mo.) 220 S. W. 487; Barnett v. Sweringen, 77 Mo. App. 64. The court did not set forth any of the statutes in the instructions and leave it to the determination of the jury whether the statutes had been followed (Cieslinski v. Clark, (Mo. App.) 223 S. W. (2) 139) and we are not concerned here with the problem of the court's duty in instructing the jury upon the law. Slaughter v. Metropolitan Street Ry. Co., 116 Mo. 269, 23 S. W. 760; White v. Reitz, 129 Mo. App. 307, 108 S. W. 601; Cobb v. Griffith & Adams, 87 Mo. 90. There is no complaint under this allegation of error as to the manner in which the court instructed the jury as to the law of Illinois in so far as it was applicable to the pleading and the proof. The sole complaint here is of the prejudicial effect of the mere reading of the statutes to the jury. Some of the statutes were not applicable to the case and plaintiff's counsel voluntarily withdrew them and in the absence of demonstration of their prejudicial effect the cause may not be reversed for another trial because of the reading of those statutes. Hollenbeck v. Missouri Pac. Ry Co., 141 Mo. 97, 38 S. W. 723. The practice of reading statutes to the jury is not to be commended (Hollenbeck v. Missouri Pac. Ry. Co., supra; Lewis v. Barnes, supra), nevertheless, in the absence of a plain demonstration of abuse of discretion and prejudicial effect, it has not been held to be reversible error when permitted, and in the circumstances of this case it may not be confidently said that the mere reading of the statutes was so prejudicial as to demand a new trial. Annotation 77 A. L. R. 650, 652; Maryland Casualty Co. v. Cook-O'Brien Const. Co., 69 F. (2) 462; Hollenbeck v. Missouri Pac. Ry. Co., supra; Lewis v. Barnes, supra; Barnett v. Sweringen, supra.

The appellants claim that the court erred in giving plaintiff's instructions 1, 2, 3, 5, 6 and 12 and in refusing certain of the appellants' instructions, including their motion for a directed verdict,

In so far as the appellants' brief and argument properly set forth "the points relied on, which shall specify the allegations of error" (Rule 1.08(3); Kleinschmidt v. Globe-Democrat Pub. Co., 350 Mo. 250, 165 S. W. (2) 620) and in so far as the specified allegations of error with reference to the giving and refusing of instructions are properly presented, briefed and argued, with citation of authorities (Rule 1.08) and reasons, they will be considered. Those questions not so briefed and argued are deemed abandoned upon this appeal. Crampton v. Osborn, 356 Mo. 125, 201 S. W. (2) 336, 339; Nichols v. Bresnahan, 357 Mo. 1126, 212 S. W. (2) 570, 573.

█ The assignment with respect to instruction No. 1 is that it "submitted the question of speed and was not supported by credible evidence." The argument is not that the instruction itself is erroneous or that there was no evidence of excessive speed. The contention that the instruction was not supported by credible evidence is based upon the fact that Merrick's deposition had been taken about three months after the accident and in the deposition he had said that he could not say how fast the truck was traveling but understood that its speed was thirty-two miles an hour as Dougherty testified. The deposition was not signed and appellants' counsel did not discover until Merrick's cross-examination that he had changed the deposition, without notice to anyone, two or three days before the trial and after the court reporter had certified and filed the deposition. In addition, when Merrick testified he said that the truck was traveling at an undiminished speed of fifty to fifty-five miles an hour. The appellants say that speed was the most important issue in the case and they complain of the conduct of Merrick and his counsel in changing the deposition and assert that without the changed testimony there was only Merrick's guess as to speed. It is in this connection that they invoke the rule set forth in Adelsberger v. Sheehy, 332 Mo. 954, 59 S. W. (2) 644, that where a party relies on the testimony of a single witness to prove a given issue, and the testimony of the witness is contradictory and conflicting, one version tending to prove the issue and the other tending to disprove it, with no explanation of the contradiction and no other circumstance tending to show which version is true, the jury should not be permitted to speculate or guess which statement of the witness should be accepted. It was improper to change the filed deposition in the manner and in the precise circumstances this one was changed, but even without the change Merrick was not conclusively bound by his testimony as originally transcribed in the deposition. Hamilton v. Patton Creamery Co., 359 Mo. 526, 222 S. W. (2) 713. When the court understood what had occurred defendants' counsel was permitted to use the original, █ unchanged deposition in cross-examining Merrick and his explanation of the changes and the weight and credibility of his evidence were for the jury. Adelsberger v. Sheehy, supra. Under Dougherty's

testimony a speed of thirty-two miles an hour, even in a thirty-five mile an hour zone, may have been negligent in the circumstances—in any event, the issue was supported by credible evidence. Hamilton v. Patton Creamery Co., supra; Gosney v. May Lumber & Coal Co., 352 Mo. 693, 179 S. W. (2) 51; Brown v. Alton R. Co., 236 Mo. App. 26, 151 S. W. (2) 727, 736.

The assignment as to instruction No. 2 is that it "fails to include the collision of defendants with a third car before colliding with plaintiff." The instruction hypothesizes the law of Illinois that motor vehicles proceeding in opposite directions are required to pass. each other to the right and to operate on their respective right half of the roadway and a finding that Dougherty caused or permitted the truck to cross over onto the left side of the highway and into the plaintiff's automobile. It is urged that the instruction "fails to contain the element which was the substantial defense in the case that Mr. Dougherty was caused to cross over the center line because his left wheel was smashed against the bumper by reason of the impact with the Roberg automobile and the instruction eliminates all justification of any kind that Dougherty might have had for causing or permitting the same to cross over to the left half of the highway." It should be noted that the appellants do not claim the plaintiff's instruction omits either an essential element of his case or a fact necessarily prerequisite to his recovery. Blackwell v. Union Pac. R. Co., 331 Mo. 34, 52 S. W. (2) 814 (omission of facts necessary to plaintiff's recovery); State ex rel. Long v. Ellison, 272 Mo. 571, 199 S. W. 984 (omission of necessary element of plaintiff's case, a finding of negligence); Macklin v. Fogel Construction Co., 326 Mo. 38, 31 S. W. (2) 14 (omission of finding of invalidity of release and settlement); Hall v. Manufacturers Coal and Coke Co., 260 Mo. 351, 367, 168 S. W. 927 (omission of both necessary facts and element). The appellants contend that the instruction *excludes,* eliminates or rules out of the jury's consideration Roberg's driving in front of the truck, the truck's colliding with Roberg's car, causing the truck to become uncontrollable. In short they contend that the plaintiff's instruction in effect precludes the jury's consideration of the appellants' defense and evidence in support of it that a third party, Roberg, caused the collision. The rule upon which they rely is thus stated and illustrated in Clark v. Hammerle, 27 Mo. 55, 70: "A party therefore who asks an instruction on the whole case must not frame it so as to exclude from the consideration of the jury the points raised by the evidence of his adversary. If a suit is on a bond for the payment of money, and the defendant gives evidence tending to show that he has paid it, it would not be proper for the court, at the instance of the plaintiff, to instruct the jury that if they believed that the defendant executed the bond, they will find for the plaintiff. Such instruction would be erroneous, as it would exclude from the

jury all consideration of the question of payment." Likewise, in Bouligny v. Metropolitan Life Ins. Co., (Mo. App.) 133 S. W. (2) 1094, the real issue was sound health of the insured when the policy was written but the plaintiff's instruction directed a verdict upon a finding that the company's physician had examined the insured for the purpose of determining her insurability. It was said that the instruction gave to the plaintiff's hypothesis the "quality of conclusiveness." In effect it excluded from the jury's consideration the defense and the evidence supporting it that the insured was not in sound health when the policy was issued. In Willhite v. City of St. Louis, 359 Mo. 933, 224 S. W. (2) 956, the plaintiff's instruction declared the defendant guilty of negligence as a matter of law if the defendant's truck passed on the right side of a stopped automobile and in that manner precluded the jury from considering the defendant's evidence that the boy ran out from between parked cars into the side of the truck. True enough, the court says "this instruction *ignored* defendant's evidence" but, of course, the court meant that the instruction "excluded," "eliminated," or "precluded" the jury's consideration of the defense and the evidence in support of it. It is not necessary to attempt a reconciliation of all the cases but a plaintiff's instruction properly hypothesizing his affirmative facts and theory of recovery is not erroneous in *omitting* reference to or ignoring the defendants' evidence which merely tends to disprove the plaintiff's affirmative allegations and evidence. Gately v. St. Louis-S. F. Ry. Co., 332 Mo. 1, 56 S. W. (2) 54, 63; Mitchell v. Wabash Ry. Co., 334 Mo. 926, 69 S. W. (2) 286; Griffith v. Delico Meats Products Co., 347 Mo. 28, 145 S. W. (2) 431; Bebout v. Kurn, 348 Mo. 501, 154 S. W. (2) 120. "Since the plaintiff's instruction authorizing a verdict submitted the elements necessary to recovery, and the defendant's instructions authorizing a verdict for defendant submitted the defenses pleaded, the plaintiff's instruction cannot be condemned as erroneous in not submitting those defenses." Perry v. M.-K.-T. R. Co., 340 Mo. 1052, 1068, 104 S. W. (2) 332, 340. In Rawie v. C. B. & Q. R. Co., 310 Mo. 72, 274 S. W. 1031 the plaintiff's verdict directing instruction hypothesized excessive speed and omitted or ignored the defensive evidence of the negligence of the truck driver with whom the deceased was riding. Instructions given on behalf of the defendant covered this subject as well as the deceased's contributory negligence. It was held that the plaintiff's instruction properly presented the hypothesis upon which he was entitled to recover, excessive speed, and that the instruction was not erroneous in ignoring the defendant's defensive evidence when the defendant's instructions "hypothesized in various ways the facts constituting the defense to the facts hypothesized in that instruction (plaintiff's), and, taken with it, covered the law upon that feature of the case."

As indicated, it was the plaintiff's theory that the truck approached and drove through the intersection at an excessive rate of speed and as a result it struck the rear-end of Roberg's car and continued on down the highway over two hundred feet and, instead of passing on its right side of the highway, suddenly turned to the left and crashed into his stopped car. In contradiction Dougherty says that the car was but fifteen to twenty feet from the intersection when it was hit, that it was not stopped and had first indicated by its lights that it was turning to the left and then turned right and was not entirely in its traffic lane when hit. It was the appellants' defense, supported by their evidence and submitted in instructions, that Dougherty had the right of way over Roberg, that Roberg so suddenly drove out in front of the truck that there was not time or space in which to avoid hitting his car, that colliding with Roberg caused him to swerve into Merrick's car and that Roberg's negligence was the sole cause of the collision. In these circumstances the evidence is not undisputed that Dougherty was caused to cross over because of the prior collision with Roberg's car, that is Dougherty's version of the occurrence but other inferences are reasonably permissible from the facts and circumstances and the plaintiff's instruction was not prejudicially erroneous in ignoring or omitting reference to the defendants' version and defense which was covered by the sole cause instruction on their behalf. Easterly v. American Institute of Steel Constr., 349 Mo. 604, 162 S. W. (2) 825; Bebout v. Kurn, 348 Mo. 501, 154 S. W. (2) 120; . Rawie v. C. B. & Q. R. Co., supra.

As to instruction No. 3 the assignment is that it "is a repetitious submission of the question of speed and does not hypothecate any facts, and is not a correct statement of Illinois law." The instruction is substantially in the language of subsection (a) of the Illinois statute concerning speed. Smith-Hurd Ill. St. Ann., Ch. 95 1/2, Sec. 146; Edwards v. Bell, (Mo. App.) 103 S. W. (2) 315; Loveless v. Berberich Del. Co., 335 Mo. 650, 73 S. W. (2) 790. This particular instruction does not require a finding of facts concerning subsection (c) of the Illinois statute: "The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, * * * when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary * * *." Likewise this instruction does not take into consideration that the truck was traveling in a thirty-five mile an hour zone at a speed of thirty-two miles an hour as Dougherty testified. As indicated, that was the appellants' claim but it was the plaintiff's claim and testimony that the truck was traveling at a speed of fifty to fifty-five miles an hour. The instruction does not hypothesize all the facts within the requirements of Yates v. Manchester, 358 Mo. 894, 217 S. W. (2)

541, but as the appellants point out there were two other instructions on the subject of speed. Instruction No. 1 was based upon subsection b(2) of the Illinois Uniform Traffic Act. It hypothesized the Illinois statute, the weight of the truck, the size of its tires and a "rate of speed in excess of forty miles an hour." Instruction five was a counter-instruction to the defendants' sole cause instruction and was based upon the claim of Dougherty's excessive speed. The instruction complained of does not hypothesize the facts as required by Yates v. Manchester, supra, but when all the instructions are considered (McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S. W. (2) 37, 40), sufficient facts were hypothesized, at least the instruction was not so prejudicially erroneous as to materially affect the merits of the action and compel the granting of a new trial. Mo. R. S. 1949, Sec. 512.160(2); Mahan v. Baile, 358 Mo. 625, 216 S. W. (2) 92.

■ As indicated, instruction No. 4, given on behalf of the defendants, hypothesized Roberg's conduct as the sole cause of the collision and exonerated the defendants if the jury found the facts and hypothesis of the instruction. Instruction No. 5 presented the plaintiff's countervailing theory of Dougherty's speed as the cause of the collision and his ability after Roberg drove into the intersection to avoid colliding with his automobile and likewise instruction No. 6 hypothesized Dougherty's ability to avoid colliding with Merrick's automobile. The specific objection to these two instructions is that they "fail to require that defendant Dougherty *saw* the Roberg car (the third car)" or "to know of plaintiff's position." As stated in the beginning, when Dougherty was 1000 feet from the intersection he saw Merrick's car 1000 feet west of the intersection. He described the course of Merrick's car which was in plain view. Likewise he saw Roberg's car and claims that he signaled Roberg with his lights. Both vehicles, admittedly, were in plain view all the time. There was no issue in the case as to whether Dougherty *saw* Roberg or *knew* of Merrick's position upon the highway. The issue was whether, as Dougherty claimed, Roberg so suddenly drove onto the highway in front of him that there was not space and time in which to avoid hitting his car and whether that conduct on the part of Roberg was the sole cause of the collision so as to exonerate the appellants. The instructions do not hypothesize that Dougherty *saw* Roberg in a position of peril or *knew* of Merrick's position, the instructions assume that he *saw* Roberg as well as Merrick, admitted or undisputed facts, and it was not prejudicially erroneous to assume or ignore them in the instructions. Flach v. Ball, (Mo. App.) 240 S. W. 465; Hill v. St. Louis Pub. Serv. Co., (Mo.) 64 S. W. (2) 633.

■ As to the refusal of instructions the one question properly briefed is the refusal of appellants' instruction A which in part hypothesized "that said highway at said time and place was of sufficient width to accommodate two vehicles and if you find that in

addition to the paving there was a shoulder to the right of the pavement on the side of the road used by said Thomas E. Merrick and if you find that said Thomas E. Merrick failed to drive his automobile as close to the right hand side * * *." In short it is urged that the appellants were entitled to an instruction on contributory negligence because the plaintiff did not pull over onto the shoulder of the highway on his side of the road. There may be circumstances in which it would become one's duty to drive upon some portion of the highway not ordinarily used for vehicular travel but in the circumstances of this collision there is no evidence, from any point of view, from which it is a reasonable inference ▮▮▮ that Merrick was contributorily negligent in not driving upon the shoulder of the highway and it was not error to refuse the instruction. McGuire v. Steel Transp. Co., 359 Mo. 1179, 1184, 225 S. W. (2) 699, 702.

▮▮ For his resulting injuries the jury awarded the plaintiff $11,000. The plaintiff is now thirty-six years of age, six feet two inches tall and weighs 191 pounds. He is employed by the McDonald Aircraft Corporation. The doctor who treated him says that he was in a state of shock as a result of the collision and his injuries. He was given oxygen and sent to the hospital in Highland where a quart of plasma was administered. There was a laceration of his scalp, "a curve laceration across the vertex at the top of the head" nine inches long. It was down to the covering bone of his skull and it took fifteen stitches to sew it up. There was a cut on his left wrist three inches long which required six stitches. There were also bruises and small abrasions on both knees. He claims that his back hurts, that his arm goes to sleep, that he has "fatigue in the knees" and that his nerves are not so good, "iron nerves that I had before." A doctor who saw him nine times in 1949 said that his permanent injuries were the scars on his head and wrist. As to any other permanent injury the doctor did not express an opinion but said, "have a very guarded opinion of the future, of course," would have to reserve his opinion. He says there is some rigidity and tenderness in the left lumbar muscles and some evidence of injury generally. He was in the hospital from the night of December 23rd to December 31st and was at home two weeks. His hospital bill was $105.00 and he had doctors' bills of $90.00 and $9.00. He lost three weeks' wages at $95.00 a week. There were no fractures of any kind although his examining doctor said that he must have had a concussion. The scars are visible but not particularly disfiguring. When he first returned to work he was given light work, since then he has had an increase in pay.

In the past verdicts of $8000 to $10,000 for fractured skulls, together with other injuries, some of them quite serious, have been approved as not excessive. Emerson v. Mound City, (Mo.) 26 S. W. (2) 766; Palmer v. Brooks, 350 Mo. 1055, 169 S. W. (2) 906; Gold-

baum v. James Mulligan Print. & Pub. Co., 347 Mo. 844, 149 S. W. (2) 348. In this case there were no fractures and except for the scars on the head and wrist there is no particularly satisfying evidence of serious permanent injury. Harrell v. Berberich, 359 Mo. 551, 222 S. W. (2) 733. Bearing in mind the applicable general rules for testing the excessiveness or reasonableness of verdicts for personal injuries (Annotations 16 A. L. R. (2) 3; 16 A. L. R. (2) 393; Tatum v. Gulf, M. & O. R. Co., 359 Mo. 709, 223 S. W. (2) 418) and considering the change in the cost of living or the decreased purchasing power of money (Annotation 12 A. L. R. (2) 611) the verdict of $11,000 is obviously excessive by $3500. Harrell v. Berberich, supra; Olian v. Olian, 332 Mo. 689; 59 S. W. (2) 673. If the respondent will, within fifteen days from the date of the filing of this opinion, enter here a remittitur in the sum of $3500 the judgment for $7500, as of the date of the original judgment, will be affirmed; otherwise the judgment will be reversed and the cause remanded because of the excessiveness of the verdict. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C.; is adopted as the opinion of the court. All the judges concur.