## LANSFORD

v.

## SOUTHWEST LIME CO.

### No. 43721.

Supreme Court of Missouri.

Division No. 1.

April 12, 1954.

Roy Coyne, John R. Martin, Joplin, for appellant.

Herbert Van Fleet, Joplin, Seiler, Blanchard & Van Fleet, Joplin, of counsel, for respondent.

VAN OSDOL, Commissioner.

This is an appeal from a judgment upon verdict for plaintiff for $15,000 for the wrongful death of plaintiff's husband who was fatally injured when a truck he was driving collided with defendant's tractor-trailer.

Plaintiff-respondent has filed a motion to dismiss the appeal because of asserted failure to comply with 42 V.A.M.S. Rules of Supreme Court, rule 1.08(a). We have examined defendant-appellant's brief and plaintiff-respondent's motion. Two of defendant-appellant's four points are not developed in its brief by the citation of authorities and argument. They are deem-

ed abandoned. Merrick v. Bridgeways, Inc., 362 Mo. 476, 241 S.W.2d 1015; Crampton v. Osborn, 356 Mo. 125, 201 S.W.2d 336, 172 A.L.R. 344. The two other points and assignments of error therein stated are sufficiently developed to merit review. The motion to dismiss the appeal is overruled.

Defendant-appellant contends the testimony of plaintiff's witness, who stated his observations of the movement of defendant's tractor-trailer prior to and at the time of the collision, was unbelievable, contrary to the shown physical facts and inherently impossible, and hence afforded no substantial evidentiary basis for plaintiff's recovery. Defendant-appellant further contends that plaintiff's principal verdict-directing instruction (No. P–1) was erroneous in that the instruction "did not properly eliminate" contributory negligence of plaintiff's decedent; and that the instruction assumed and did not require the jury to find the facts necessary to plaintiff's recovery "from the evidence."

The fatal collision occurred on U. S. Highway No. 71 near the east end of an overpass or bridge over the tracks of the Missouri Pacific Railroad at a point about two miles north of Jasper. Approaching from the north, the highway, paved with concrete twenty feet wide, makes a wide sweeping turn in a southeasterly direction and goes slightly upgrade as it approaches the west end of the bridge. The highway then crosses the bridge in an approximate west-east direction. The bridge is about one hundred fifty feet long. It has concrete railings and is paved with concrete twenty feet in width. Beyond the east end of the bridge, the grade declines and the highway curves back more southwardly. Metallic rails, five or six feet from the edges of the pavement, guard the approaches to the east and west ends of the bridge.

Plaintiff's husband had been driving northwardly in a truck belonging to his employer, Smith Brothers Manufacturing Company. The tractor-trailer belonging to defendant Southwest Lime Company was being driven southwardly by defendant's employee.

One Rusco, witness for plaintiff, testified he had been driving southwardly following defendant's tractor-trailer for two or three miles in approaching the place where the collision occurred. It was misting rain. The pavement was slick. The left dual wheels of the tractor-trailer were consistently some two or three feet over in the left (northbound) lane of the pavement. The tractor-trailer was moving about fifty miles per hour. As the tractor-trailer moved up the west approach and on to the bridge, its left wheels "were in the wrong lane. * * * Every bit of two feet over the line." The witness next saw the Smith truck (described as a "bobtail" truck) "in mid-air." The truck "was sideways." It was "on its right side" of the pavement. The left wheels of defendant's tractor-trailer were still in the wrong lane.

The Smith truck came to rest headed northwardly, its front end protruding over the north guard rail at a point eighteen feet east of the east end of the bridge. It was tilted or partially overturned to its right. The rear end was resting on the right dual wheel and the front rested on the guard rail. Photographs indicate the left front of the Smith truck was badly damaged.

The witness Rusco parked his car near the west end of the bridge and walked eastwardly across the bridge to the scene of the collision. He saw plaintiff's decedent on the pavement "beside (west of) the left rear duals (of the Smith truck)." He did not talk to defendant's driver, nor did he talk to another truck driver who had arrived there very soon after the vehicles collided. He saw no smoke or fire. He observed debris "on the north of the center line in the north-bound lane of traffic." He wasn't there over ten minutes at the most. He drove on to Carthage and reported the accident to the employer of plaintiff's decedent.

The driver of the tractor-trailer, witness for defendant, testified defendant's combination unit had the gross weight of thirty-seven thousand pounds. The witness said he was driving the unit on his right side of the pavement in approaching and moving over the bridge, and at a speed of about forty miles per hour. He saw the Smith truck "clearing the curve at the bottom from the east * * * he (the Smith truck) was more or less in the middle of the road." It was "going around fifty." Plaintiff's decedent was "trying to get his truck on the other (his own right) side of the road." The witness drove the tractor-trailer on across the bridge and pulled off on the right (south) shoulder in attempting to avoid a collision, the right wheels passing over onto the shoulder twelve, fifteen or eighteen feet east of the bridge. He said the collision occurred thirty-five or forty feet east of the bridge—"It could be a little less." When the vehicles collided, the right side of the tractor-trailer "was dragging along the guard rail at the south edge of the bridge."

The tractor-trailer came to rest to some degree tilted over to its right on the outer edge of the shoulder on the south side of the pavement approximately two hundred twenty feet east of the east end of the bridge. The left end of the front bumper of the tractor-trailer was bent backwardly; the front spring and brake hose were sheared; the "arm off the steering section" was damaged; the left headlight and the left front fender were crumpled back or destroyed; and the left running board and the fuel tank on the left were torn off.

Defendant's driver further testified that gasoline from the fuel tank "sprayed" the side of the trailer and ignited, and a lot of gasoline burned "right there in the road." (Other witnesses for defendant testified of observing fire and smoke.) The witness, and other witnesses for defendant, testified that plaintiff's decedent was lying on the shoulder of the highway east of the Smith truck.

Photographs show tracks of the right wheels of the tractor-trailer along and close to the south guard rail on the east approach; and at one point, perhaps a hundred feet east of the east end of the bridge, the tractor-trailer apparently had passed closer to and scraped or pressed against the guard rail crowding it a foot or so (southwardly) out of alignment.

Defendant-appellant argues the testimony of plaintiff's witness Rusco was unbelievable. Defendant urges the conduct of the witness in making no inquiry and in making no offer of assistance was not that of a person who had just witnessed an accident and who was among the first to arrive at the scene. Defendant further reminds us that none of defendant's witnesses testified as having seen Rusco, and that several of defendant's witnesses expressly denied having seen him there at the time where and when he said he was. Defendant points out that Rusco testified of having observed no fire or smoke, and that he had said plaintiff's decedent was lying on the concrete pavement to the left or west of the Smith truck, whereas defendant's witnesses testified plaintiff's decedent was lying on the earthen shoulder partially under the right side of the Smith truck. Defendant further calls our attention to the facts that the record shows the trial court had theretofore sustained one motion (filed by defendant) for a new trial of this case on the specified ground the verdict was against the weight of the evidence, and that the trial judge (in his statement upon overruling defendant's instant motion for a new trial) said the statute "specifically provides that not more than one new trial may be granted on account of the verdict being against the weight of the evidence, so I feel I have no recourse except overruling the motion." See Section 510.330 RSMo 1949, V.A.M.S.; McFarland v. United States Mutual Accident Ass'n, 124 Mo. 204, 27 S.W. 436. Defendant also argues that it was physically impossible for the tractor-trailer to have thrown the front end of the Smith truck eight feet above the elevation of the pavement, as Rusco testified.

██ Defendant's driver testified that the tractor-trailer was of the gross weight

of thirty-seven thousand pounds. It is certainly not unreasonable to suppose it was possible that the force of the collision of the heavy combination unit with the Smith truck of lesser weight operated upon and raised the front end of the Smith truck as the witness Rusco said. It has been remarked that so frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except when they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other. 10 R.C.L. 1009; Higgins v. Terminal R. R. Ass'n of St. Louis, 362 Mo. 264, 241 S.W.2d 380; Steffen v. Ritter, Mo. Sup., 214 S.W.2d 28; Settle v. Baldwin, 355 Mo. 336, 196 S.W.2d 299, and cases therein cited.

It is not contended the testimony of the witness Rusco, if believed and considered in connection with the circumstances otherwise shown in evidence, was not substantial evidence of defendant's negligence as submitted. We cannot say the testimony of the witness was contrary to the physical facts or inherently impossible, or that the inferences deducible from his testimony were so opposed to reasonable probability as to be manifestly false. Contrast Roseman v. United Rys. Co. of St. Louis, Mo.App., 251 S.W. 104, cited by defendant-appellant. We think we should not say it would have been the more natural, in the situation, for Rusco to have attempted to render assistance there at the scene than to have driven on to Carthage, as he said he did, to notify deceased's employer. Certainly such testimony of Rusco as to his stated conduct, and other asserted inaccuracies in his testimony do not compel a conclusion that he never even saw the collision, as defendant-appellant urges. In this connection, Rusco's testimony that he notified decedent's employer at Carthage (within about thirty minutes after the accident occurred) was corroborated by two witnesses. And we think the asserted failure of the witness to observe or to accurately state what he had observed, and his other testimony more positive in

character and the probability or improbability of its verity in the circumstances and as compared or contrasted with the testimony of other witnesses, were matters for the jury whose province it was to judge the credibility of the witnesses and to weigh and evaluate their testimony. When factual issues, supported by substantial evidence, are submitted to the jury and correct instructions are given advising the jury of the facts essential to their verdict, it is not the function of an appellate court to disagree with the jury's views as to what are the true facts. Higgins v. Terminal R. R. Ass'n of St. Louis, supra, and cases therein cited; Wilcox v. Coons, 362 Mo. 381, 241 S.W.2d 907. This brings us to a consideration of defendant-appellant's contention of errors in instructing the jury.

Plaintiff's principal verdict-directing instruction (No. P–1) was as follows,

"The court instructs the jury that if you find and believe from the evidence in this case that * * * plaintiff was the wife of Edwin G. Lansford; and if you further find that * * * Lansford was driving a Chevrolet truck belonging to his employer in a northerly direction along U. S. Highway 71 near Jasper * * *, and approaching an overpass over the Missouri Pacific Railroad tracks, and was at all times herein mentioned exercising the highest degree of care for his own safety; and if you further find and believe that at said time and place the defendant, through its admitted agent and servant * * * was driving a tractor with semi-trailer attached in a southeasterly direction along the same highway, was approaching the said truck being driven by * * * Lansford, and was crossing and coming off of, or was off of, said overpass; and if you further find and believe that as the two trucks approached each other and met the defendant's driver failed to keep his truck as close to its right hand side of the highway as practicable but operated the same so that a portion of it was to its left of the center line of the high-

way, and if you find and believe that defendant's driver was so driving his truck that a portion of it was to the left of the center line of the highway and in , meeting another truck driven by the said Lansford coming from the opposite direction along the same highway failed to turn his truck to its right of the center line of the highway so that the two vehicles could pass without danger of collision; and if you further find and believe that defendant's agent and servant operated defendant's truck in the respects set forth immediately above, and that in so doing said driver failed to exercise the highest degree of care in the operation of defendant's truck and was thereby negligent, and that as a direct result of such negligence, if you find he was negligent, the two trucks collided on * * * Lansford's right side of the highway and the said Lansford as a direct result thereof suffered injuries which brought about his death and that the plaintiff was damaged by reason of the death of the said Edwin G. Lansford; then you are instructed that your verdict in this case will be in favor of the plaintiff * * *."

■ Having read the instruction and other instructions given by the trial court, we believe defendant-appellant's contention that Instruction No. P–1 did not properly "eliminate" the contributory negligence of plaintiff's decedent is without merit. As we understand defendant-appellant's contention, it is that the instruction was so framed as to "exclude" or "eliminate," or to "preclude" the jury from a consideration of the evidence tending to support the affirmative defense of contributory negligence, and consequently the jury was not properly advised upon that issue. The jury, however, were required by the instruction to find that plaintiff's decedent "was at all times herein mentioned exercising the highest degree of care." And, at defendant's request, the trial court gave Instruction No. D–4 directing a verdict for defendant upon a finding of contributory

negligence specifically as therein hypothesized. See and compare Edwards. v. Woods, 342 Mo. 1097, 119 S.W.2d 359. A principle has been stated that, if a plaintiff's instruction authorizing a verdict for plaintiff submits the elements necessary to plaintiff's recovery, and defendant's instructions authorizing a verdict for defendant submit the defenses pleaded, the plaintiff's instruction cannot be condemned as erroneous in not submitting those defenses. Perry v. Missouri-Kansas-Texas R. Co., 340 Mo. 1052, 104 S.W.2d 332, and cases therein cited; Edwards v. Woods, supra; Merrick v. Bridgeways, Inc., supra.

■ Instruction No. P–1 discloses submission in the first clause of the instruction as follows, "that if you find and believe from the evidence in this case" that plaintiff was the wife of her decedent. In subsequent clauses the instruction said, "and if you further find and believe," and the phrase "from the evidence" was omitted. Of course, controverted essential facts should not be assumed in an instruction, nor should a jury be permitted to find an essential fact other than from the evidence introduced in the trial of the case. Now Instruction No. P–1 did not assume the facts. On the contrary, it required the jury to find the facts hypothesized. Compare Lewis v. Illinois Cent. R. Co., Mo. Sup., 50 S.W.2d 122. But, since the instruction was somewhat unnecessarily interspersed with the language, "and if you further find and believe", see Cruce v. Gulf, Mobile & Ohio R. Co., 361 Mo. 1138, 238 S.W.2d 674, it might have been better in each instance to have added the phrase "from the evidence." However considering the requirement of the first clause that the jury's finding of the fact submitted in that clause should be "from the evidence" together with the quoted language of the other clauses, we are of the opinion the instruction could not have misled the jury to defendant's prejudice; that is, we believe a jury composed of ordinarily intelligent laymen would understand, when all of the instruction, including the first clause, was read to or by them, that the

trial court was submitting all the facts hypothesized in the instruction for the jury's finding *from the evidence.*

The judgment should be affirmed.

It is so ordered.

LOZIER and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.