In 17 M.L.R., 1952, page 348, the following statement is made:

"Vernier has described the Missouri statutes providing for the surviving spouse of an intestate as 'needlessly confused and complex' and 'archaic'. * * *"

We find against defendant under this allegation of error.

■ Under assignment of error No. 7 it is contended that the widow cannot be deprived of her right of occupancy of the homestead property without her consent or until death or remarriage.

We have cited authorities, including the ones relied upon by defendant under this allegation. These authorities clearly state that the only method by which a homestead interest can be sold is the remedy provided in section 513.525 RSMo 1949, V.A.M.S., that is, "if it shall appear that such homestead cannot be occupied in severalty without great inconvenience to the parties interested in such homestead or in such residue".

It is needless to say more upon this assignment of error. It is without merit.

Under assignment of error numbered 8, it is contended that it is impossible to render a valid decree in favor of the plaintiffs in harmony with the reasoning of this court and with a liberal and humanitarian construction of the homestead act prescribed by the court.

■ We cannot ascribe to this doctrine. We are duty bound to interpret the law as it is written and we are further bound by the law as it has been last declared by our Supreme Court. We are fully aware that the homestead act now on the statute books of this state wholly fails to provide for the need of the widow and minor children. We have stated herein that laws are made by the legislature of this state and the courts are created to give force to such legislative acts by a fair and liberal interpretation thereof. Therefore, this court is without power to reverse a case upon the theory expressed in defendant's last allegation of error.

Judgment affirmed.

STONE, J., concurs.

E. L. DE WINTER and M. J. DeWinter, Partners, d/b/a Suburban Tire Service, Respondents,

v.

Charles R. (Babe) LASHLEY, d/b/a Lashley Motor Sales Company, Appellant.

No. 7311.

Springfield Court of Appeals.

Missouri.

Dec. 28, 1954.

Will H. D. Green and H. D. Green, West Plains, for defendant-appellant.

Otis L. Clonts, St. Louis, J. L. Bess, West Plains, for plaintiff-respondents.

RUARK, Judge.

The plaintiff-respondents sued the defendant-appellant and his wife on an account which involved the sale of a quantity of tires. Defendant Hetta Lashley filed her separate answer, and plaintiffs have abandoned as to her. The defendant in his answer set up, among other things, that the plaintiffs fraudulently represented that the tires were "first line rubber tires and were guaranteed"; that the defendant relied upon the warranty and misrepresentation; that he had paid all the tires were worth; and that he had suffered a loss of profits because they were not as represented but were seconds, synthetic and carried no guarantee. The case was tried to a jury and the plaintiffs obtained verdict in their favor, both on the case in chief and the defendant's counterclaim.

Briefly, the evidence was that plaintiffs were engaged in the wholesale tire business in St. Louis and defendant was engaged in the automobile business at West Plains. Plaintiffs' evidence was that they sold defendant the tires, which were largely truck tires, during July and September of 1949. That these were "first quality brand new tires." That the defendant made no complaint concerning the quality of the tires until long after the sale and when he was being pressed for payment. That defendant made one payment amounting to $300.56 on January 7 following the sale of the tires after a telephone call requesting payment. Plaintiffs introduced their invoices of sales to the defendant and also an invoice to plaintiffs from the Firestone Tire and Rubber Company, which, so it was testified, included the tires in question, and upon which invoice certain symbols indicated that certain of the tires were of superior quality in that they had thicker treads than the ordinary or average truck type.

The defendant testified (and this was all his evidence on the subject of warranty or representation):

"Question: I will ask you if these tires purchased were guaranteed as first class one hundred per cent rubber tires? Answer: That is right. "Question: By reason of that guarantee did you purchase the tires? Answer: That is right, I bought lots previous to these." The witness further testified that the tires were not one hundred per cent tires, that he didn't know whether they were "synthetic or rubber" but that they were second-grade tires with the serial numbers and the initial F (manufacturer's symbol) buffed off. The defendant and other witnesses testified that certain of the tires were mounted on a truck, that they developed cracks and had to be replaced within a period of thirty days; and defendant contended that he had made repeated complaints and requested adjustment of his account.

One of defendant-appellant's contentions is that plaintiff's instruction number 4 was erroneous. The defendant did not, in his motion for new trial, preserve that question by complaining in respect to the giving of that instruction; consequently this charge of error is not before us. Section 512.160 RSMo 1949, V.A.M.S., and Supreme Court rule 3.23, 42 V.A.M.S.

Appellant in his motion for new trial and his assignment here contends that the giving of plaintiffs' instruction number 1 was error. Such instruction was as follows:

"The Court instructs the jury that if you believe and find from the evidence in this case that the defendant purchased from the plaintiff the goods described in the evidence; and if you believe and find that the

goods so purchased by the defendant from the plaintiffs were first class in both material and workmanship; and if you believe and find that the price charged the defendant by the plaintiffs was the reasonable market price and value of such goods at the time of the sale and delivery of the goods to the defendant; and if you believe and find that the defendant has failed to pay the plaintiffs the reasonable market price and value of the goods so sold and delivered to the defendant by the plaintiffs, then your verdict will be for the plaintiffs and against the defendant for the difference between the reasonable market price and value of such goods sold and delivered to the defendant and the amount paid by the defendant on account of the reasonable market price and value, but not to exceed the sum of Six Hundred and Eighty-nine ($689.00) Dollars, the amount prayed for in plaintiff's petition."

It is appellant's contention that the use of the words "were first class in both material and workmenship" failed to cover the whole case and left out a material part of the defense, which was that the tires were represented as being "first line rubber tires with a guarantee."

■ It is held, as a general proposition, that an instruction authorizing a verdict for the plaintiff which ignores a pleaded defense upon which evidence has been introduced, and which has not been abandoned, is bad. Pence v. Kansas City Laundry Service Co., 332 Mo. 930, 59 S.W. 2d 633; Jones v. St. Louis-San Francisco Ry. Co., 226 Mo.App. 1152, 50 S.W.2d 217; Bebee v. Kansas City, 223 Mo.App. 642, 17 S.W.2d 608, loc. cit. 613; Willhite v. City of St. Louis, 359 Mo. 933, loc. cit. 937, 224 S.W.2d 956; Usona Mfg. Co. v. Shubert-Christy Corp., Mo.App., 132 S.W. 2d 1101, loc. cit. 1104; Bouligny v. Metropolitan Life Ins. Co., Mo.App., 133 S.W.2d 1094, loc. cit. 1097; Bebout v. Kurn, 348 Mo. 501, 154 S.W.2d 120; State ex rel. St. Joseph Belt Ry. Co. v. Shain, 341 Mo. 733, 108 S.W.2d 351.

■ But as to defensive matters, that is, matters which are not essential to the plaintiff's cause of action but are a part of the evidence by which defendant hopes to defeat plaintiff's case, a mere omission (as distinguished from an exclusion or positive misdirection which would result in a conflict in the instructions) is cured by defendant's instructions which require such fact to be found or which direct a verdict upon the finding of such facts. Merrick v. Bridgeways, Inc., 362 Mo. 476, loc. cit. 485, 241 S.W.2d 1015; Lansford v. Southwest Lime Co., Mo., 266 S.W.2d 564; Fitzgerald v. Metropolitan Life Ins. Co., Mo.App., 149 S.W.2d 389; Griffith v. Delico Meats Products Co., 347 Mo. 28, 145 S.W.2d 431; Mitchell v. Wabash Ry. Co., 334 Mo. 926, 69 S.W.2d 286; Fisher v. Duster, Mo.App., 245 S.W.2d 172; Gately v. St. Louis-San Francisco Ry. Co., 332 Mo. 1, 56 S.W.2d 54, loc. cit. 63; Perry v. Missouri-Kansas-Texas R. Co., 340 Mo. 1052, 104 S.W.2d 332, loc. cit. 340.

■ In this case plaintiffs submitted their case in accordance with their evidence. The defendant submitted his defense to the case in instruction A and his counterclaim under instruction C. The worst which can be said of plaintiffs' instruction is that it *omitted* the use of some words which defendant thought were necessary to a full expression of the defense theory. It was not a positive misdirection, nor was it an exclusion. The defendant having covered the situation to his own liking in instructions A and C, the error of omission, if such existed, was cured by the giving of such instructions.

■ Moreover, we think plaintiffs' instruction substantially covered the issue. We must take the evidence and not the bare pleadings in order to determine what facts were the subject of hypothesis. The evidence did not show, and the defendant did not testify, that the tires "carried a guarantee" which was a part of the sale (such as an agreement to replace if found defective within a certain time). What he said was that the seller "guaranteed" them as *first class one hundred per cent rubber tires.* The word "guaranteed" as used in the sense here used was obviously an expres-

sion intended to be synonymous with "represented," "assured," "held forth" or "warranted."

■■ Neither does the expression "one hundred per cent" when considered as a part of the "guarantee" add anything but emphasis. It could not be interpreted to mean that the tires were represented to be one hundred per cent (completely?) rubber in composition, for it is a matter of common public knowledge, disagreeably familiar to everyone who has ever fixed a puncture or a blowout on the road, that tires are made up of materials (fabric, for instance) in addition to rubber. Nor does the evidence show that the representation was that the rubber content of the tires was natural or synthetic, nor if so which was superior.

The statement "first class one hundred per cent rubber tires," stripped of its nonessential underscoring, was simply that the articles sold were first class tires. Plaintiffs' instruction hypothesized the tires to be *first class in both material and workmanship.*

■■ All of the instructions of the case must be read together and they must be construed as a whole from the viewpoint and understanding which reasonably intelligent men would have concerning them. Deficiencies in an instruction which, standing alone, might be a misdirection, are cured if the instructions as a whole furnish a proper guide for the jury. Duffy v. Rohan, Mo., 259 S.W.2d 839, loc. cit. 841; Machens v. Machens, Mo., 263 S.W.2d 724, loc. cit. 732; Mueller v. Schien, 352 Mo. 180, 176 S.W.2d 449, loc. cit. 453; Nelson v. Tayon, Mo., 265 S.W.2d 409; Killinger v. Kansas City Public Service Co., Mo., 259 S.W.2d 391.

We hold the giving of plaintiffs' instruction number 1 was not error.

The remaining assignment is that the court erred in failing to sustain objections to argument as follows:

By Mr. Bess: " * * * You folks know before you can get an adjustment you must return the articles."

By Mr. Green: "We object to that statement. It is not the facts here and not before this court."

Also: "I want to object to the argument for the reason that is not the law as declared in these instructions here and object to that about him having to return the tires."

At some later time the following occurred:

By Mr. Clonts: "No one has testified he would take them back or didn't sell them again."

By Mr. Green: "We object to that. There is no testimony about that and it can't be answered now. There is no testimony about that and he is quoting it as testimony and no answer can be made to it by the defendant. The case is closed."

Still later the following occurred:

By Mr. Clonts: " * * * He never testified he had to replace any of them he sold."

By Mr. Green: "We object to that statement for the reason that Mr. Lashley testified he replaced them."

■ The excerpts are so fragmentary that we cannot say with any certainty to what phase of the case the argument pertains nor what had been said before. The defendant had testified that he had offered to return the tires to the plaintiffs, and that plaintiffs' agent told him, "no, my word was good." Plaintiffs' evidence was that there had been no complaint by defendant. If the argument was directed at that portion of the evidence, the lawyer had a right to urge any inference of fact therefrom. In respect to the argument concerning "he never testified he had to replace any of them he sold," we cannot say with certainty whether this was directed toward replacements by the defendant retailer or the plaintiff wholesaler. The whole matter was before the trial court, who heard the complete arguments, which are not avail-

able to us. The trial court is allowed considerable discretion in permitting or restraining the argument. Kelso v. W. A. Ross Const. Co., 337 Mo. 202, 85 S.W.2d 527, loc. cit. 541; State ex rel. St. Louis-San Francisco Ry. Co. v. Cox, 329 Mo. 292, 46 S.W.2d 849, loc. cit. 854; Songer v. Brittain, Mo.App., 272 S.W.2d 16, loc. cit. 20. In order to reverse the judgment we would necessarily be required to find not only that error was committed by the trial court but that it materially affected the merits of the action. Section 512.160 RSMo 1949, V.A.M.S. We cannot so find.

For the reasons foregoing the judgment is affirmed.

McDOWELL, P. J., and STONE, J., concur.