Ruth TURNER, Respondent,

v.

Bobby Lee COWART, Appellant.

No. 54118.

Supreme Court of Missouri,
Division No. 1.

Nov. 10, 1969.

Joslyn & Joslyn, L. D. Joslyn, T. B. Russell, Charleston, for respondent.

Harold D. Jones, Bock & Jones, New Madrid, for appellant (defendant) Bobby Lee Cowart.

## PER CURIAM.

A trial jury returned a verdict in favor of Ruth Turner for $25,000 damages for personal injuries sustained in a collision between an automobile in which she was riding as a passenger and an automobile driven by the defendant Bobby Lee Cowart. Cowart has appealed from the ensuing judgment.

A northbound passenger automobile driven by defendant on Highway 53 in Butler County collided with a southbound automobile in which plaintiff was a passenger. The roadway at this point was straight and fairly level. It was a 20-foot bituminous pavement. It was dark. The weather was clear and the roadway dry. The two vehicles collided in the southbound lane. There were skid marks starting in the northbound lane of traffic, extending across the center line into the southbound lane, where a quantity of debris and a deep gouge mark were found. After the collision the two automobiles were found parked side by side, ten feet apart, both headed west, one half of each vehicle on the shoulder and one half on the road. The front end of the southbound automobile was "extremely" damaged. The right front of the northbound automobile was "extensively damaged."

*Plaintiff's testimony:* She was a passenger in a car driven south at "medium speed" by a man with whom she worked. He was killed in the collision. The car was traveling south, on its own right side of the road at all times, and never on its left side of the road. The only evidence on behalf of plaintiff relating to the facts of the collision was plaintiff's own testimony, as follows: "Q. Just tell the jury when you were looking south just before this wreck occurred what you first saw,

if you saw a car. A. When I first seen this car— Q. Where was it? A. It was meeting me on my side and a little before it got a certain distance it switched across back on the left side, on his side going north, and then it switched back in on my side and that is when it hit me. Q. Which side of the road did the cars come together on? A. It came together—it had went back on the north side first and then come back into me and hit me on the south side. * * * Q. Whose side of the road were [the cars] on after the wreck, your side or their side? A. On my side." (Cross-examination): "Now, when the accident occurred you say your car was in the south-bound lane? A. Yes, sir. Q. Your right-hand lane and that both vehicles after the accident were turned pointed to the west on the edge of the highway there? A. Yes, sir."

*Defendant's testimony:* The investigating state highway patrolman found 75 feet of "heavily laid skid marks," beginning at the edge of the northbound lane, on the east side of the highway, extending straight down the highway due north in the northbound traffic lane, then beginning to turn, crossing the center line, "skidding across the road into the southbound traffic lane" and going on 96 feet farther, ending just north of one of the vehicles, in the southbound lane. There debris, dirt, oil, blood and broken glass and the deep gouge mark in the pavement were found, immediately north of the automobile in which plaintiff had been riding. No skid marks or tire marks were found north of the cars.

Defendant testified that he was heading north; that the other car was approaching him; that he paid no attention to it at first and until it "got right up on" him; that it was in his lane; that he applied the brakes, locked all four wheels, and "swerved" to the left to get out of "his way"; that he was in the southbound lane when the collision occurred. He gave these answers to these questions: "Q. Did your car go 171 feet down the highway skidding its tires? * * * A. I guess

it did. Q. Did you kind of twist as you went along or— A. No, sir. * * * Q. Were its brakes sliding * * *? A. Yes, sir." John Blanchard, a passenger in defendant's car, testified that when the brakes were applied he looked up and the oncoming car was approaching in the northbound lane.

Plaintiff's main verdict-directing instruction follows:

"INSTRUCTION NO. 2

"Your verdict must be for plaintiff if you believe:

"First, defendant drove on the wrong side of the road, and

"Second, defendant was thereby negligent, and,

"Third, as a direct result of such negligence plaintiff sustained damage."

Appellant makes the point that the court erred in giving No. 2 because "the undisputed physical facts and evidence" show that defendant's automobile skidded 75 feet in his own proper lane, and then crossed the center line and continued to skid another 96 feet in the southbound lane of traffic; that Instruction No. 2 ignores the sudden emergency with which defendant claimed he was confronted, and ignores the skidding, requiring only a finding that defendant "drove" on the wrong side of the road although the "undisputed evidence" is that he was skidding and not "driving," thus excluding the possibility of nonnegligent skidding as the proximate cause. Appellant cites Jokisch v. Life & Cas. Ins. Co. of Tenn., Mo.App., 424 S.W. 2d 111, 117 [9, 10]; Davis v. Werremeyer, Mo.Sup., 377 S.W.2d 319, 323 [2]; Evans v. Colombo, Mo.Sup. (Banc), 319 S.W.2d 549, 551 [1, 2]; Wray v. King, Mo.App., 385 S.W.2d 831, 835 [10]; Painter v. Knaus Truck Lines, Inc., Mo.Sup., 375 S.W.2d 19, 25 [6], to which may be added Strickland v. Barker, Mo.Sup., 436 S.W. 2d 37, and McIntyre v. Whited, Mo.Sup., 440 S.W.2d 449, 451 [4].

■ The difficulty with appellant's point is that all of the evidence that defendant *skidded* across the center line onto the wrong side of the road came from defendant and his witnesses, and not from plaintiff.[1] Where the evidence of skidding is confined to the defendant's case, and does not get into the record as a part of plaintiff's own case, it is not necessary for plaintiff's verdict-directing instruction to refer to the subject of skidding, because "plaintiff is under no duty to hypothesize or otherwise notice defensive or exculpatory evidence introduced by his adversary * * *." Wray v. King, supra, 385 S.W.2d, 1. c. 833 [3]. "A plaintiff's verdict directing instruction properly hypothesizing his affirmative facts and theory of recovery is not erroneous in omitting reference to or ignoring the defendant's evidence which merely tends to disprove the plaintiff's affirmative allegations and evidence. Merrick v. Bridgeways, 362 Mo. 476, 241 S.W.2d 1015, 1021; Gately v. St. Louis-S. F. Ry. Co., 332 Mo. 1, 56 S.W.2d 54, 63. Defendant did not plead skidding as a defense and did not offer an instruction submitting any theory of defense based on his evidence that his car slid or skidded. The evidence of skidding was offered under the general denial in defendant's Answer. Assuming that such evidence of skidding was a defense, it would be in the nature of a sole cause situation which is not an affirmative defense. McVey v. St. Louis Public Service Co., supra, [Mo.Sup., 336 S.W.2d 524]. In this type of situation, plaintiff is not required to hypothesize for recovery any facts which go beyond plaintiff's own theory of recovery. [citing cases] * * *." Glowczwski v. Foster, Mo.App., 359 S.W.2d 406, 410 [5].

In his Points and Authorities appellant sought to raise the question whether Instruction No. 2 erroneously ignored defendant's "duty" to avoid plaintiff's southbound vehicle in view of defendant's evidence that it was in defendant's northbound lane of traffic. This point was abandoned because it was not supported by the citation of authorities on the question and was not developed in the Argument portion of appellant's brief. Terry v. Boss Hotels, Inc., Mo.Sup., 376 S.W.2d 239, 248 [21]; Lansford v. Southwest Lime Co., Mo.Sup., 266 S.W.2d 564.

The next question is whether the court erred in permitting the impeachment of the witness John Blanchard, called as a witness by the defendant, by the use of a petition for damages filed by Blanchard against this same defendant in another lawsuit. Blanchard and his wife were passengers in defendant's automobile at the time of the collision with plaintiff's automobile. Mrs. Blanchard died as a result of injuries received in the collision. John Blanchard brought suit against defendant for damages arising out of her death, charging defendant with negligently failing to drive and operate his automobile upon the right half of the roadway, failing to keep a lookout for other vehicles upon the highway and driving' at a high and dangerous rate of speed, etc. Blanchard, called as a witness for defendant in the trial of Ruth Turner's case, testified that when defendant applied his brakes Blanchard looked up and "saw the car in our lane * * * in the northbound lane * * *." Blanchard's testimony left the inference that defendant's automobile was on its proper side of the highway. On cross-examination Blanchard testified that he employed an attorney; that he related to the attorney what occurred and that the attorney filed a petition for damages in his behalf. He denied that in relating the facts he had told his attorney that defendant carelessly and negligently drove and operated his automobile on the

---

1. Under plaintiff's evidence defendant's automobile was meeting her on her side of the road when she first saw it; then it went back to its proper side, and then came back onto her lane, where the collision occurred. She used the colloquialism "switched across" and "switched back," by which we take it she meant "went across" and "came back." This cannot by any stretch of the language be interpreted to mean that the automobile skidded across or skidded back.

wrong side of the road, or failed to keep a lookout for other vehicles, or drove his car at a high and dangerous rate of speed. Over defendant's objection John Blanchard's petition, Exhibit B, was read to the jury in its entirety. On this appeal defendant asserts that this impeachment of Blanchard prejudiced defendant by giving the jury the impression that Blanchard's testimony was perjured; that the allegations of negligence in Blanchard's petition were multiple pleas which may not be used as admissions because they do not possess the characteristics inherent in admissions against interest; that they are not statements of fact against interest but are averments, made hopefully and optimistically at pleading time, amounting to nothing more than allegations of theoretical legal liability.

Blanchard's allegation that defendant failed to operate his automobile on the right half of the roadway was a purely factual allegation which directly contradicted the clear inference from his trial testimony to the contrary. There was no error in the admission of Exhibit B in impeachment of Blanchard's testimony with reference to this fact. Helton v. Huckeba, 365 Mo. 93, 276 S.W.2d 78, 81–82 [4]. Furthermore, Exhibit B was admissible to impeach Blanchard's testimony that he did not tell his lawyer that defendant had driven at a high speed, on the wrong side of the road, without keeping a lookout. From the fact that Blanchard had discussed the case with his lawyer and that these charges thereafter appeared in the petition the jury could conclude, contrary to Blanchard's testimony, that Blanchard had so informed his lawyer.

Appellant further complains that the whole of the petition in the death case, including the prayer for $25,000, was submitted to the jury for its consideration, and that the prayer was commented on in argument. A party who desires to restrict the jury to a consideration of material portions of an exhibit and to exclude immaterial portions should point out the objectionable matter and ask for such exclusion and limitation, but that was not done in this case. The argument that suit was brought in the death case for the limit allowed by law at that time was irrelevant, but it went in without objection and in any event was nonprejudicial.

Appellant's third point is that the court erred in giving Instruction No. 3 which told the jury that according to the American Experience Table of Mortality a person of the age of 40 years has a life expectancy of 28.18 years, but that this was given to the jury only as a suggestion. It is urged that this constituted prejudicial error, since the table was not introduced in evidence. "This position is not well taken. Courts take judicial notice of these tables, and it is not error to instruct the jury concerning them, though they are not introduced in evidence." Medley v. Parker-Russel Min. & Mfg. Co., Mo.App., 207 S.W. 887, 890–891 [8]. And see Langan v. United States Life Ins. Co., Mo.App., 121 S.W.2d 268 [3]; Selle v. Selle, 337 Mo. 1234, 88 S.W. 2d 877, 883; Hohlstein v. St. Louis Roofing Co., 328 Mo. 899, 42 S.W.2d 573 [4].

Appellant further objects on the ground that this instruction is not an authorized MAI instruction. Missouri Approved Jury Instructions are not all-encompassing. When MAI fails to provide an instruction on a particular subject an instruction meeting the requirements of Civil Rule 70.01(a), V.A.M.R. may be specially drafted to fit the situation.

Finally, appellant objects that he was prejudiced because plaintiff's counsel communicated to the jury that appellant's liability was insured. Before trial, in response to an inquiry by opposing counsel, counsel for appel-

lant revealed that he was employed by MFA Insurance Company to defend under a policy of liability insurance. He objected to inquiry respecting insurance on the ground that the collision occurred six years previously and that the parties lived in different counties, separated by 65 or 70 miles, so that panel members would have no reason to know that MFA Insurance Company was interested in the case. This objection was overruled. On voir dire examination appellant's counsel asked one question: whether any members of the panel were employed by or were members of the board of directors or managing staff of MFA Insurance Company, or had any connection therewith. There is nothing to show that this inquiry was not made in good faith. It developed that the state highway patrolman who made the investigation of this collision and who testified in the case for appellant was at the time of trial an employee of MFA Insurance Company. Eliciting this fact on cross-examination did not prejudice appellant. It was proper inquiry as affecting his credibility and the weight to be given to his testimony. Leavitt v. St. Louis Public Service Co., Mo.App., 340 S.W. 2d 131, 138 [10]. In closing argument counsel for plaintiff commented that appellant brought a witness who is employed by MFA Insurance Company "who was a patrolman at the time"; that counsel for appellant relied "a great deal on the man he calls the trooper. He doesn't call [him] the MFA employee now. He calls him the trooper, but his testimony is obviously not the same that it was when he wrote his report up * * *." It is argued that the combined effect of injecting the fact of insurance during the voir dire examination, the cross-examination of the witness Davis, and the closing argument were "sufficient to 'tip the scales' for plaintiff, who had the normal sympathy of one with severe injuries." We are not so persuaded, and find no error in any of the three factors, whether considered singly or in combination.

Judgment affirmed.

SEILER, P. J., HOLMAN, J., and GREEN, Special Judge, concur.

STORCKMAN, J., absent.