**Merial ROUSH, Respondent,**

v.

**Martha SANDY, Appellant.**

**No. WD 47483.**

Missouri Court of Appeals,
Western District.

Feb. 22, 1994.

Rehearing Denied March 29, 1994.

Edward F. Ford, Kansas City, for appellant.

Gary M. Steinman, Kansas City, for respondent.

Before BERREY, P.J., and BRECKENRIDGE and SMART, JJ.

BERREY, Presiding Judge.

The appellant appeals from the trial court's judgment in favor of respondent for breach of contract. Appellant and respondent are sisters both in their seventies. In 1974, appellant purchased a lot at Lake Waukomis for $11,000. The lot was titled in her name only. Respondent testified that she did not realize her name was not on the deed. Appellant entered into a contract to build a home on the lot in December of 1975. The contract price was $50,234.78. Of this amount respondent contributed $16,354 with the balance paid by appellant. Appellant incurred a $26,000 mortgage to build the house. Appellant paid off the mortgage and paid approximately $10,000 for improvements to the property. Respondent did not contribute to the mortgage payments.

The property in dispute is located at 967 South Shore Drive. The parties stipulated that the property's fair market value is $81,-000. The house has two levels with two separate living areas and a common garage. Appellant lived down-stairs and respondent lived upstairs from 1976 until 1987.

Respondent testified that before the house was built, she and her sister discussed the possibility of moving to a retirement home. They decided if they pooled their money, they could build a home in a location closer to appellant's work at TWA. When they decided to build the house, they both looked at lots. Appellant purchased the lot herself because respondent's funds were tied up in a townhouse she owned in Overland Park. Subsequently, respondent sold her townhouse in Overland Park in order to have money for the house at 967 South Shore Drive. Respondent said her sister told her to "contribute as much money as you can from the sale of the townhouse in Overland Park and we will have a better home." Respondent agreed to do so.

Both sisters made decisions on the plans for the house. It was agreed the house would have two levels. Appellant would live

on the lower level and respondent would live on the upper level. Each level has its kitchen, bath and living area.

At least a portion of the bills for construction of the house were in both sisters' name and respondent alone paid a number of the bills as part of her contribution to the new home. It is undisputed that respondent contributed $16,354 toward the construction of the home.

When respondent moved into the "967 house," she was employed as a house mother for a fraternity at Kansas University. She lived at the fraternity house throughout the school year. Respondent lived at the "967 house" during summer, Christmas, and spring breaks and occasionally, over a weekend. Respondent's daughter shared the "967 house" with her for about two years. Respondent's daughter left after appellant said she would have to leave.

Respondent made utility payments to her sister even though she was living and working at KU. During the eleven years the sisters shared the "967 house," respondent did not pay rent, but she did pay $13,579 for utility bills which totaled $19,589 or approximately 70% of the total utility bills. Respondent testified that she told her sister to apply whatever she overpaid for her share of utilities toward house improvements.

Appellant testified that she did not ask her sister to pay rent. Respondent testified she felt no obligation to pay rent, since she felt like she owned part of the house. Respondent testified she helped with the maintenance of the home, despite her asthma, by scraping, painting, pulling weeds, and shoveling snow.

Respondent testified that appellant told her before the house was built, "[w]e will build the house together. You'll always have a home here." Appellant denied making this statement. Respondent testified that the agreement to live in the new home, "was contingent upon the sale of my townhouse."

The sister's relationship was already "faltering" when in early 1987, appellant told respondent "you and I will have to split." Respondent then said, "All right. I will look around for some living areas in Lawrence, but we'll have to make some—have to come to some agreement as to financial arrangements, because I have nothing to live on. All my money is in the 967 house." Respondent moved out in April of 1987, due to her sister's statement. Appellant testified she did not intend for her sister to leave the residence.

When respondent moved out, she left behind draperies and window blinds that she had purchased, a refrigerator that she had helped purchase, and a boat in which she owned a half interest. Respondent claims the value of the items she had to leave behind was $1200.

Respondent testified that as a result of leaving her sister's residence, she had to pay $600 a month for rent for an unstated period of time, in addition to moving expenses. Appellant paid her sister a total of $1500 in June of 1987. Appellant said she gave her sister the money when she asked for it because she was "totally out of funds."

Respondent testified that after she moved out, appellant characterized respondent's contribution as a loan and that they discussed what would be an appropriate interest rate. Appellant rejected repaying her sister the $16,354 at eight percent interest. Appellant testified that she did not call her sister's contribution a loan. Appellant called the contribution, "an investment, just like building a house is an investment." Appellant testified that her sister contributed the money because, "she enjoyed putting that money into her living quarters." Appellant also testified, "I think any money you spend in construction is an investment. You can either win or lose."

Respondent sued appellant under the following theories: petition to establish and enforce a resulting trust, petition to establish a constructive trust, petition for an accounting of partnership property, petition for damages, and petition for equitable relief. The trial court found in favor of respondent only on Count 4 alleging breach of contract. Damages of $16,350 plus interest at eight percent per annum from May 30, 1976, to date of judgment, were awarded to respondent.

The parties have not graced this court with the depositions or exhibits referred to in the trial transcript. This court must take the record as it comes to us. *Board of Public Utilities v. Fenton*, 669 S.W.2d 612 (Mo.App. 1984). We cannot consider evidence not presented to this court.

Appellant alleges the trial court erred when it granted judgment to respondent on her petition for damages because a writing was necessary to enforce such a contract and there was no substantial evidence that appellant breached a contract. Appellant also alleges the trial court erred by permitting testimony of an offer to compromise and that awarding damages with interest was not appropriate.

Appellate review of this matter is pursuant to Rule 73.01(c). This court is to sustain the judgment unless there is no substantial evidence to support it, unless it against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). This court does not weigh the evidence, but determines whether sufficient evidence supports the verdict. *Marshall v. Edlin*, 690 S.W.2d 477 (Mo.App.1985). We consider the evidence here in the light most favorable to the verdict, giving respondent the benefit of all reasonable inferences. *Id.*

■ In the first subpart of appellant's Point I, she alleges the trial court erred in granting judgment to plaintiff on her petition for damages because a writing was necessary to have an enforceable right to occupy the house for life.

Appellant claims that in order to have a legally enforceable right to occupy a house for life, a writing is required. In support of this argument, appellant cites § 441.060.2 RSMo (1951) which states:

All contracts or agreements for the leasing, renting or occupation of ... houses ... not made in writing, signed by the parties thereto ... shall be held and taken to be tenancies from month to month ...

The statute of frauds is an affirmative defense and must be pleaded by the party claiming its benefit. *Brooks v. Cooksey*, 427 S.W.2d 498, 502 (Mo.1968). We have examined the record and cannot find where this issue was pleaded or raised in the trial court. The writing requirement was not raised in the answer nor in the motion to reconsider. Our review is limited to those issues put before the trial court. *Ibarra v. Missouri Poster & Sign Co.*, 838 S.W.2d 35, 40 (Mo. App.1992). This court will not, on review, convict a lower court of error on an issue not put before it to decide. *Dixon v. Bradsher*, 779 S.W.2d 727, 733 (Mo.App.1989).

■ In the second subpart of Point I, appellant contends there was no substantial evidence to support the trial court's finding that appellant breached the agreement by telling respondent "its time we split."

There is no dispute that appellant told respondent, "[y]ou and I will have to split." Respondent understood the statement to mean that she would have to move out of the residence. Appellant testified she made the statement in order to "come to some conclusion" as to what to do since both parties were not getting along. We believe it is irrelevant what the parties meant or understood by "its time we split." The judgment was supported by substantial evidence by appellant's testimony that respondent's contribution to the house was, "probably an investment."

Point II alleges the trial court erred in permitting testimony of an offer to compromise over objection and that the court used the testimony as a basis to determine the damages.

■ The general rule is that an offer of compromise of an existing controversy is privileged and inadmissible as an admission of fault. See e.g. *Tripp v. Harryman*, 613 S.W.2d 943, 949–50 (Mo.App.1981). The testimony in question was in regards to how the sisters would resolve their dispute. They also discussed what would be an appropriate interest rate. Respondent's testimony regarding the offer of compromise was not relevant nor admissible for any other purpose.

■ There is substantial evidence to support the $16,354 contribution for the construction of the home. There was however

no relevant and admissible evidence to support the award of eight percent interest from May 30, 1976 except for the testimony of the offer to compromise. We believe the trial court abused its discretion when it received the offer of compromise testimony.

In Point III appellant alleges the trial court erroneously applied the law when it awarded plaintiff a full refund of her contribution with interest. The trial court awarded damages of $16,350, the approximate amount of respondent's initial investment, plus interest at the rate of eight percent per annum from May 30, 1976 to date.

It is undisputed that respondent contributed $16,354 to the construction of the residence. The dispute lies over the trial court's award of interest from May 30, 1976. As stated above, we believe there was no relevant or admissible evidence to support the award of eight percent interest from May 30, 1976.

■ Count IV of respondent's petition alleged there was an agreement entered into by the parties in 1976 that respondent would have a lifetime residence which was breached by the appellant in April of 1987. There is no dispute that appellant performed her obligation under the agreement for eleven years by providing respondent with a residence. Respondent entered into such an agreement and invested $16,354 to build a house with her sister. Respondent did not invest the $16,354 in order to receive interest on her investment. We therefore find that the trial court abused its discretion when it awarded respondent interest from the date of the parties agreement to the date of judgment. Rather, we award interest, at the statutory rate of nine percent per annum from February 19, 1988, the date respondent demanded payment. § 408.040 RSMo (1987).

The trial court's judgment in favor of respondent and against appellant in the sum of $16,350 is affirmed. The award of interest at the rate of eight percent per annum from May 30, 1976 to date is reversed. The cause is reversed and remanded to the trial court for entry of a judgment for interest consistent with the finding herein.