**Charles R. HALL, Barbara Hall, Kenneth R. Keller, Louise Keller, and Stephen T. Burns, Plaintiffs–Respondents,**

v.

**Patricia E. ALLEN and Patricia Ruth Pierce, Defendants–Appellants.**

No. 20042.

Missouri Court of Appeals, Southern District, Division Two.

May 7, 1998.

Motion for Rehearing or Transfer to Supreme Court Denied May 29, 1998.

Application for Transfer Denied Aug. 25, 1998.

Richard D. Bender, Sherwood, Honecker & Bender, Springfield, for Appellants.

Jerry L. Redfern, Richard L. Schnake, Neale & Newman, L.L.P., Springfield, for Respondents.

PARRISH, Presiding Judge.

Patricia E. Allen and Patricia Ruth Pierce (defendants) appeal the judgment in an eject-

ment action brought by Charles R. Hall, Barbara Hall, Kenneth R. Keller, Louise Keller and Stephen Burns (plaintiffs). The judgment established the location of boundary lines of Lot 13, Block 6, Gobblers' Mountain Subdivision, in Stone County, Missouri. It further established ownership of certain land lying between the boundaries of the subdivision and land owned by the U.S. Government that includes Table Rock Lake. It determined that owners of Lots 14, 17 and 18, Block 6, of the subdivision had acquired additional land located on the southwesterly side of Lake Shore Drive, a subdivision road, by adverse possession. This court affirms.

### Background

This is a continuing saga of a long-standing title dispute. The dispute previously produced litigation that reached this court and the Supreme Court of Missouri. *See Hall v. Allen,* 771 S.W.2d 50 (Mo. banc 1989) (hereafter referred to as *Hall I*).[1] The relief sought by *Hall I* was quiet title. *Id.* at 52. In *Hall I* the trial court concluded that two land surveys the respective parties offered in evidence lacked credibility. It declined to rely on either.[2] On that basis, it refused to quiet title.

The supreme court held that the trial court did not err in refusing to quiet title; that the requirement to adjudicate title was not violated because the litigants were seeking a determination of the location of boundary lines. The proper remedy for determining the location of boundary lines is ejectment, not quiet title. The supreme court affirmed the trial court's refusal to adjudicate title.

*Hall I* also addressed the rights of owners of Lot 14, Block 6, of Gobblers' Mountain Subdivision (the Halls) in land lying on the southwesterly side of Lake Shore Drive. Part of the land defendants claimed as part of Lot 13, Block 6, (which is on the southwesterly side of Lake Shore Drive) was also claimed by the Halls. *Hall I* held that the Halls, as owners of Lot 14, Block 6, had an easement across land on the southwesterly side of Lake Shore Drive where a path existed that was used for access to a boat dock the Halls maintained on the lake. *Hall I* was remanded to determine a "precise route of access" for use by the owners of Lot 14, Block 6, that would be "consistent with the interests of convenience, and reasonable, accessible use" by them. *Id.* at 53.

*Hall I* did not adjudicate the boundary lines of Lot 13, Block 6, of Gobblers' Mountain Subdivision. It did not determine a claim by owners of Lots 14, 15, 17 and 18 of Block 6 that their lots extended southwesterly across Lake Shore Drive to the boundaries of the tract of land owned by the government. *See* appendix to *Hall I,* 771 S.W.2d at 54, for diagrams of the applicable parts of Gobblers' Mountain Subdivision as they appear on the original subdivision plat and three amended plats. *Hall I* did not ascertain whether there was land lying between the boundaries of the subdivision and the land owned by the U.S. Government.

### The Area in Dispute

The original plat and the amended plats of the subdivision depict the location of Lots 14, 17 and 18, Block 6, of Gobblers' Mountain Subdivision, on the northeasterly side of Lake Shore Drive. Lot 13 is on the southwesterly side of Lake Shore Drive. The U.S. Government land that includes Table Rock Lake lies southwesterly of Lake Shore Drive. The Halls own Lot 14. The Kellers own Lot 17. Mr. Burns owns Lot 18. Defendants own Lot 13.

---

1. The named appellant in *Hall I* is identified as Charles E. Hall. The parties to this appeal acknowledge that the person designated as "Charles E. Hall" in *Hall I* was, in fact, Charles R. Hall, one of plaintiffs in the case now before this court.

2. One of the surveyors in *Hall I* testified that the survey he prepared was not based "on any existing pins or survey stakes, but rather on his own interpretation of the [subdivision dedicators'] intention." 771 S.W.2d at 52. The other surveyor, testifying about the survey he performed, told the trial court that "he based his survey 50% on available deed descriptions and 50% on what the [parties who hired him] told him was their property." *Id.* The second surveyor testified that the survey he prepared "was not worth the paper it was written on." *Id.*

## After Hall I

After *Hall I* plaintiffs caused additional surveys to be performed. They employed Edward R. Reding, a registered land surveyor. He undertook to establish the boundaries of Lot 13. He concluded that the information shown on the original plat for the sides of Lot 13 would not compute mathematically. There were no compass bearings shown on the plat. The distances shown for the sides drawn on the plat did not establish an area of land that was a closed figure.

Mr. Reding concluded that, in order to establish the boundaries of Lot 13, it would be necessary to base a survey on what was shown on the plat and what was found in the field. Mr. Reding prepared two surveys for purposes of locating the boundaries of Lot 13. He tied his surveys to established government corners, to pin locations within the subdivision, and to the location of the house that was constructed on Lot 13. Based on the surveys he performed, Mr. Reding concluded that an area of land existed between the boundaries of Gobblers' Mountain Subdivision and the tract of land that was conveyed to the United States Government for use as Table Rock Lake.

The judgment that is the subject of this appeal ascertained the location of the boundaries of Lot 13. It determined there was land between the subdivision and the land that belongs to the U.S. Government. It determined that the owners of Lots 14, 17 and 18 acquired ownership of parts of the land on the southwesterly side of Lake Shore Drive by adverse possession. The judgment further determined that plaintiffs owned additional land between the subdivision and the U.S. Government property. Plaintiffs acquired the additional land from Maier Developments, Inc. (Maier). *See Hall I,* 771 S.W.2d at 51.

The trial court's determinations were based on one of the Reding surveys admitted in evidence, Plaintiffs' Exhibit 24. The survey included metes and bounds descriptions of six parcels of land. The trial court included the land descriptions from the survey in its judgment. The parcels were identified as Tracts I, II, III, IV, V and VI. Metes and bounds descriptions of the individual tracts were identified and attached to and made part of the trial court's judgment. The text of the judgment refers to the various parcels of land by their tract designations.

The trial court determined Lot 13, Block 6, to be the land described as Tract III. It found that defendants acquired land located on the southwesterly side of Lake Shore Drive, and described as Tract VI, by adverse possession. The Halls were found to own the land described as Tract V. The Kellers were found to own Tract II. Mr. Burns was found to own Tract I.

## Issues in this Appeal

Defendants present two points on appeal. Both are directed to the part of the judgment that holds plaintiffs own land on the southwesterly side of Lake Shore Drive other than the area within Lot 13. Defendants do not challenge the trial court's determination of the boundaries of Lot 13.

■ An appellate court will set aside a trial court's judgment only when it has a firm belief the judgment is wrong. *Baiwir v. Moody,* 947 S.W.2d 822, 823 (Mo.App. 1997). It does not weigh the evidence that was before the trial court but determines whether there was sufficient evidence to support the trial court's determination. *Roush v. Sandy,* 871 S.W.2d 98, 101 (Mo.App.1994). The evidence is considered in the light most favorable to that determination, giving the prevailing party the benefit of all reasonable inferences. *Id.*

Point I contends the trial court erred in holding that plaintiffs own land below Lake Shore Drive. Defendants contend the determination was not supported by the evidence because it was based on a survey that *Hall I* determined was unreliable, the survey made by Benny Rozell, and was based on deeds to plaintiffs in which Maier was grantor and which defendants claim conveyed nothing. Defendants' complaint is, in essence, that the trial court's finding concerning land owned by plaintiffs on the southwesterly side of Lake Shore Drive is against the weight of the evidence.

The first part of Point I, the claim that the trial court's determination is faulty because it is based on the Rozell survey, is directed to the part of the judgment that found Charles R. Hall and Barbara Hall owned property on the southwesterly side of Lake Shore Drive and the part of the judgment that ejected defendants from that parcel of land. Those parts of the judgment identify the land on the southwesterly side of Lake Shore Drive that the Halls own as "the Rozell Survey Blue Land, which is a portion of the Disputed Land lying outside of Lot 13, Block 6, of Gobblers' Mountain Subdivision in Stone County, Missouri, and abutting the United Stats [sic] Army Corps of Engineers boundary line running between Corps or [sic] Engineers Monuments F600–7 and F600–8, *and are set forth with particularity in Tract V, attached hereto, and incorporated by reference herein.*" [Emphasis added.]

Tract V is described with particularity, by its metes and bounds, according to the Reding survey that the trial court found to be accurate. This description appears on one of the attachments made part of the judgment by incorporation by reference. The reference to the Rozell survey, that *Hall I* determined was not credible, was *nothing more* than a statement that the land described as Tract V was the same land identified as "Blue Land" in documents produced from the faulty Rozell survey. The trial court did not rely on the Rozell survey for purposes of describing the Halls' land. Defendants' claim to the contrary is not correct.

The remainder of Point I that contends the trial court erred in finding the Maier deed conveyed property to plaintiffs also fails. As found in *Hall I*, the developers of Gobblers' Mountain Subdivision were M.L. Strohm and Rena Strohm. They conveyed to Maier the northwest quarter of Section 11, Township 22 North, Range 23 West, Stone County, Missouri, excepting therefrom "Table Rock Tract No. F–600" (the property previously conveyed to the U.S. Government) and certain subdivision lots within Gobblers' Mountain Subdivision. 771 S.W.2d at 51. Maier thereafter conveyed by quitclaim deed a certain part of the land it had acquired from

Strohms to plaintiffs using a description based on the Rozell survey. *Id.* at 51–52.

*Hall I* declared that Maier conveyed the disputed strip of land to plaintiffs, but held that the evidence presented in that case had not been sufficient for the trial court to determine that the land conveyed to plaintiffs was part of the land Maier acquired from Strohms. *Id.* at 52. *Hall I* held that plaintiffs "had not proved that the land shown in the Rozell survey was Maier's to convey." *Id.*

▮ In this case plaintiffs presented evidence, based on the Reding survey, that established part of the area to which the Rozell survey referred was in Lot 13 and part of it was included in the land the Strohms conveyed to Maier, land that Maier thereafter conveyed to plaintiffs.

The trial court's finding that Maier owned land between Lake Shore Drive and the tract of land owned by the U.S. Government and that Maier conveyed that land to plaintiffs by quitclaim deed was not against the weight of the evidence. "[A] quitclaim deed is as effective as any other deed for the purpose of transferring title." *Humphrey v. Sisk,* 890 S.W.2d 18, 21 (Mo.App.1994). The trial court did not err in finding plaintiffs were owners of "land below Lake Shore Drive." Point I is denied.

▮ Point II asserts that plaintiffs' claims to land below Lake Shore Drive were barred by res judicata by reason of *Hall I*. The doctrine of res judicata precludes the same parties from relitigating a cause of action. *Jacobs v. Corley,* 732 S.W.2d 910, 913 (Mo.App.1987). For res judicata to apply, the following must be the same in both actions: (1) the identity of the thing sued for; (2) the identity of the cause of action; (3) the identity of the parties to the cause of action; and (4) the identity of the quality or capacity of the person for or against whom a claim is made. *Id.*

*Hall I* sought to adjudicate the ownership of the property that is the subject of this appeal. Had title been adjudicated in that action, the principles on which defendants rely would have merit.

*Bover v. Long,* 676 S.W.2d 893 (Mo.App. 1984), explains:

"The doctrine of res judicata applies, ... 'not only to points and issues upon which the court was actually required by the parties to form an opinion and pronounce judgment, but to every point which properly belongs to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.'"

*Id.* at 896, *quoting Autenrieth v. Bartley,* 238 Mo.App. 55, 176 S.W.2d 546, 549 (1943). *Bover* identified the general rule set out in Freeman on Judgments, Vol. 2, § 855, pp. 1809–11 (5th ed.1925):

"... [I]t may therefore be laid down as a general rule that whatever the form or nature of the action, whenever title or ownership of property comes directly in issue and is litigated to a judgment, such judgment is conclusive upon the same issue whenever it arises in subsequent litigation between the same persons or their privies, even though the cause of action be different or although other or additional property or interests be also involved in the second action. This rule is as applicable to decrees in equity as to judgments at law. Thus a decree in chancery adjudicating title or right to possession is conclusive in a subsequent suit in ejectment, even in states where the common-law inconclusiveness of a judgment in ejectment still prevails. If an equitable title has been adversely determined in a suit to establish it, the adjudication is conclusive in subsequent litigation wherein the same title is relied upon."

*Bover,* 676 S.W.2d at 896 n. 2.

Defendants' argument fails, however, because *Hall I* did not adjudicate title. It held that the trial court did not err in declining to adjudicate title in that case. In other words, the ownership of the property now in dispute was not previously "litigated to a judgment." Point II is denied. The judgment is affirmed.

MONTGOMERY, C.J., and BARNEY, J., concur.